In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3786

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL E. NANCE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09 CR 30048—**Michael J. Reagan**, *Judge.*

ARGUED APRIL 8, 2010—DECIDED JULY 12, 2010

Before RIPPLE, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Michael Nance pleaded guilty to receiving child pornography. At sentencing, he objected to the use of an earlier conviction in calculating his criminal history score. He also argued that the other child pornography he possessed at the time he received the images underlying his conviction was not relevant conduct for which he could receive offense-level enhancements. The district court overruled both

objections and determined Nance's advisory Guidelines range was 151-188 months based on a criminal history category of III and a total offense level of 32. After discussing the § 3553(a) factors, the court sentenced him to 180 months' imprisonment. Nance appeals, arguing the district court incorrectly calculated both his criminal history category and his total offense level. He also claims his sentence was procedurally unsound and substantively unreasonable. We affirm.

I.

In early 2007, 25-year-old Michael Nance began a "relationship" with 12-year-old J.G. About a year later, Nance was arrested after J.G.'s mother came home early and discovered him hiding under a pile of blankets in J.G.'s bedroom. Police found an empty liquor bottle under J.G.'s bed, and Nance admitted buying her alcohol. Nance was charged with and convicted of criminal trespass to a residence and giving alcohol to a minor. He received a sentence of six months' supervision and a $250 fine.

In November 2008, J.G.'s mother discovered text messages on J.G.'s phone that implied she and Nance were sexually involved. When confronted, J.G. admitted having sex with Nance. A few days later, J.G.'s mother obtained a protective order against Nance that forbade him from contacting J.G. Police arrested Nance for violating that order a few days later. Then, in December 2008, J.G.'s mother informed police that J.G. was missing. Police found Nance and J.G. in a motel room,

along with a liquor bottle, condoms, and sexual stimu-lating gel. Nance was arrested again, charged with child abduction, and eventually released on bond.

Nance was soon arrested for violating a condition of his bond. During the ensuing investigation, Nance's mother allowed police to seize several computer hard drives from his bedroom. One of the hard drives con-tained eight still images and two videos of child pornog-raphy. Seven of the still images and one of the videos were of J.G., which, upon Nance's request, she had taken with her mobile phone and sent to his mobile phone on November 16, 2008. Nance had previously down-loaded the non-J.G. video from a peer-to-peer network in August 2008. It is not known when he received the single non-J.G. still image.

Nance was indicted for and pleaded guilty to receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). The pre-sentence investigation report (PSR) calculated his total offense level to be 34 with a criminal history category of III. Nance filed written objections to the PSR, arguing, among other things, that his sentence for criminal trespass and providing alcohol to a minor was relevant conduct and thus should not be used in calculating his criminal history score. He also argued that the video and image that did not feature J.G. should not be considered relevant conduct on which enhance-ments under U.S.S.G. § 2G2.2 could be predicated.

The district court rejected both arguments. It concluded that because Nance's earlier conviction had been consid-ered as part of a pattern of activity involving the sexual

exploitation of a minor under § 2G2.2(b)(5), under application note 3 to § 2G2.2 it could be used to figure his criminal history category—even though relevant conduct normally does not receive criminal history points. The court also found that the video and image not featuring J.G. were relevant conduct. Based on that finding, it enhanced Nance's offense level by two levels under § 2G2.2(b)(2) because the material involved a prepubescent minor less than 12 years old, and by three levels under § 2G2.2(b)(7)(B) because the offense involved at least 150 but fewer than 300 images.[1] The district court calculated Nance's advisory Guidelines range to be 151-188 months based on a criminal history category of III and a total offense level of 32.[2] Before considering the § 3553(a) factors, the court noted that it would give the same sentence regardless of whether it had ruled differently on the parties' objections to the PSR. The judge then stated he was "throw[ing] [the Guidelines range] out

---

[1] Nance did not contest a two-level enhancement under § 2G2.2(b)(7)(A): the video and still images of J.G. totaled at least 10 but less than 150 images. Rather, he opposed the court's counting the non-J.G. video and still image, thereby boosting the total number of images involved to 150 (and over) and permitting a three-level enhancement under § 2G2.2(b)(7)(B). Hence, his challenge was to that net one additional level enhancement.

[2] The court sustained Nance's objection to a two-level obstruction of justice enhancement recommendation in the PSR, which accounts for the two-level difference in his total offense level calculated by the court (32) as compared to the PSR (34).

the window because I think that the sentencing in this case can be uniquely tailored without resorting to a formulaic reliance on numbers." After discussing the § 3553(a) factors, the district court sentenced Nance to 180 months' imprisonment. Nance appeals.

## II.

On appeal, Nance challenges three aspects of his sentence: (1) the district court's computation of his criminal history category using his sentence for criminal trespass and providing alcohol to a minor; (2) the court's finding that the non-J.G. video and image were relevant conduct that supported enhancements under U.S.S.G. §§ 2G2.2(b)(2) and (7)(B); and (3) the soundness of the court's sentencing procedures and the substantive reasonableness of the sentence. We address each issue in turn.

## A.

First, Nance argues that the district court improperly used his previous sentence for criminal trespass and providing alcohol to a minor in determining his criminal history category. By the district court's calculations, Nance had six criminal history points, which placed him in criminal history category III. Three of those points were based on his earlier sentence for criminal trespass and providing alcohol to a minor: he received one point under § 4A1.1(c) because that sentence was not included in § 4A1.1(a) or (b) (i.e., it was a prior sentence of less than sixty days) and two points under § 4A1.1(d) because

he committed the instant offense while serving that sentence. Nance claims that the acts underlying that sentence were relevant conduct to his offense of conviction and that the district court therefore erred in assigning him three criminal history points for that sentence. By Nance's calculation, he had only three other criminal history points, which places him in category II and thus a lower imprisonment range. We review a district court's calculation of a defendant's criminal history category based on previous sentences de novo. *United States v. Spence*, 450 F.3d 691, 695 (7th Cir. 2006).

Our discussion of this issue requires us to traverse several interconnected parts of the Guidelines and commentary. Under § 4A1.1(c) and (d), sentencing courts are instructed to add points to a defendant's criminal history score for certain prior sentences.[3] A "prior sentence" is defined in § 4A1.2(a)(1) as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." Conduct is part of the instant offense if it qualifies as relevant conduct to the instant offense under § 1B1.3. U.S.S.G. § 4A1.2,

---

[3]   To be precise, § 4A1.1(d) refers to a "criminal justice sentence" rather than a "prior sentence." According to application note 4 to § 4A1.1, a "a 'criminal justice sentence' means a sentence countable under § 4A1.2 having a custodial or supervisory component." Section 4A1.2(a) and its commentary is where "prior sentence" is defined. We will assume without deciding this means that criminal history points may be assigned under § 4A1.1(d) only for "prior sentences." *But see United States v. Weddle*, 30 F.3d 532, 537 (4th Cir. 1994).

cmt. n.1.[4] Therefore, when calculating a defendant's criminal history, a district court ordinarily cannot consider previous sentences for acts that qualify as relevant conduct. *United States v. Bryant*, 557 F.3d 489, 503 (7th Cir. 2009). The reason for this prohibition is "to avoid double counting and ensure consistency with other guideline provisions." U.S.S.G., App. C, amend. 493, at 318 (1993). Double counting is generally permissible unless the Guidelines say otherwise or there is a compelling basis for implying a prohibition. *United States v. Beith*, 407 F.3d 881, 888 (7th Cir. 2005).

Relevant conduct is defined in several ways by the Guidelines, one of which is "any other information specified in the applicable guideline." U.S.S.G. § 1B1.3(a)(4). One of the guidelines under which the district court enhanced Nance's sentence was § 2G2.2(b)(5), which directs a five-level increase "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor . . . ." According to the commentary, such a pattern encompasses "any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant, *whether or not the abuse or exploitation (A) occurred during the course*

---

[4] We understand the cross-reference to § 1B1.3 in § 4A1.2, cmt. n.1 as advising courts to use § 1B1.3(a) to determine relevant conduct, even though that provision defines relevant conduct for purposes of chapters two and three of the Guidelines and § 1B1.3(b) defines relevant conduct for chapter four (where the criminal history provisions are listed). *See United States v. Smith*, 991 F.2d 1468, 1471-72 (9th Cir. 1993).

*of the offense.*" U.S.S.G. § 2G2.2, cmt. n.1 (emphasis added). In amending the commentary to include the italicized language, the Sentencing Commission stated that the revision was, in part, a response to *United States v. Chapman*, 60 F.3d 894 (1st Cir. 1995), where the First Circuit held that the pattern of activity enhancement could not be based on past sexual abuse or exploitation that was unrelated to the offense of conviction. U.S.S.G., App. C, amend. 537, at 373 (1997). The Commission explained that such previous conduct may indeed be considered, which means "the conduct considered for purposes of the 'pattern of activity' enhancement is broader than the scope of relevant conduct typically considered under § 1B1.3 (Relevant Conduct)." *Id.* This court recognized and deferred to that determination in *United States v. Lovaas*, 241 F.3d 900, 904 (7th Cir. 2001). Thus, application note 1 to § 2G2.2 specifies that relevant conduct for the § 2G2.2(b)(5) pattern enhancement is more expansive than the conduct usually deemed relevant under § 1B1.3(a). *Id.*; *United States v. Williamson*, 439 F.3d 1125, 1139-40 (9th Cir. 2006).

The district court determined that Nance's conviction for providing alcohol to a minor and criminal trespass was relevant conduct and justified a § 2G2.2(b)(5) enhancement. Nance did not challenge that enhancement; rather, he challenged the district court's counting his sentence based on that relevant conduct in his criminal history score. Both parties and the district court correctly agreed that under § 4A1.2, cmt. n.1, relevant conduct ordinarily is not considered in calculating a defendant's criminal history score. *Bryant*, 557 F.3d at 503. But the

district court concluded that application note 3 to § 2G2.2 is an exception to that general rule. Whether that conclusion was correct is the key question we now address.

Keeping in mind the general rule that relevant conduct is excluded from assignment of criminal history points, we turn to the text of the note: "A conviction taken into account under subsection (b)(5) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." U.S.S.G. § 2G2.2, cmt. n.3. That language demonstrates that even though relevant conduct is normally precluded from receiving criminal history points, a conviction that comes within the relevant conduct considered under § 2G2.2(b)(5) is not necessarily so precluded. Based on its plain language, then, we conclude that application note 3 to § 2G2.2 carves out an exception to the general rule that relevant conduct is not factored in a defendant's criminal history score.

That conclusion comports with our decision in *United States v. McCaffrey*, 437 F.3d 684 (7th Cir. 2006), where we interpreted application note 3 to be an exception to the usual proscription against double counting. There, the defendant pleaded guilty to receiving and possessing child pornography. *Id.* at 686. At sentencing, the district court enhanced his sentence by five levels under what is now § 2G2.2(b)(5) based on his previous unprosecuted but uncontroverted acts of sexual abuse. *Id.* at 687. The sentencing court also concluded that a five-level increase in the defendant's criminal history score was

warranted based on those same past instances of sexual abuse. *Id.* On appeal, we rejected the defendant's argument that the district court had violated the usual prohibition against double counting by enhancing the defendant's offense level and criminal history score based on the same prior acts. *Id.* at 688. We reasoned that the previous criminal acts should be considered the equivalent of prior convictions taken into account under the current § 2G2.2(b)(5) and thus came within the double counting exception of what is now application note 3 to § 2G2.2. *Id.*

The Tenth Circuit reached a similar conclusion in *United States v. Groves*, 369 F.3d 1178 (10th Cir. 2004). There, the defendant pleaded guilty to receiving child pornography, and the district court enhanced his sentence by five levels under what is now § 2G2.2(b)(5) based, in part, on two earlier convictions for child molestation. *Id.* at 1181. The sentencing court also figured the defendant's criminal history score using those convictions. *Id.* at 1182. The court of appeals held that the district court violated the Ex Post Facto clause by relying on what is now application note 3 (passed after the commission of the defendant's criminal conduct) to include those convictions in his criminal history score. *Id.* at 1188. Relevant here, the court's decision turned on its understanding that the addition of that note altered the previous rule that "convictions that had *already been considered as relevant conduct* under U.S.S.G. § 2G2.2(b)[5] could not have been used to calculate the defendant's criminal history," to now "*expressly allow*[ ] *this kind of double counting*." *Id.* at 1187-88 (emphases added). Hence,

our holding that application note 3 permits convictions considered as relevant conduct under § 2G2.2(b)(5) to be counted in a defendant's criminal history score is supported by our own precedent in *McCaffrey* and the Tenth Circuit's interpretation of the note in *Groves.*

In response, Nance argues that application note 3 applies only to unrelated convictions—i.e., those that would not otherwise be relevant conduct but for § 2G2.2(b)(5)—thereby precluding an objection for double counting for such conduct while leaving the prohibition against double counting of relevant conduct in place for all other convictions. But the text of the note does not distinguish between types of convictions; it simply says "a conviction." Hence, Nance's reading runs counter to the plain language of the note.

Even if we were to read the text of the note as ambiguous, we see no reason to prefer Nance's reading. Indeed, it would render some parts of the applicable guidelines either arbitrary or redundant. There is nothing mysterious about the use of the term "relevant conduct" in § 4A1.2, cmt. n.1; as we have explained, the purpose of this cross reference is to create a general bar on using the same conduct in calculating a defendant's offense level and criminal history category. If conduct that forms a pattern of activity under § 2G2.2(b)(5)—but does not otherwise fall under § 1B1.3(a)—is relevant conduct for purposes of the double counting bar, Nance offers no principled reason why some, but not all, relevant conduct considered under § 2G2.2(b)(5) should be excepted from the bar. On the other hand, if such a

pattern of activity is *not* relevant conduct (notwith-standing the plain language of the applicable guidelines), it would be unaffected by the double counting bar in the first place.

Nance also contends that our interpretation of application note 3 will effectively require all convictions underlying a § 2G2.2(b)(5) enhancement to count as criminal history, which, he says, contradicts the permissive phrasing of the note—"*is not excluded* from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." (emphasis added). Not so. Part A to Chapter Four has many other conditions that must be satisfied in order for a "prior sentence" to count as criminal history. *See, e.g.*, U.S.S.G. § 4A1.2(c) (excluding certain misde-meanor and petty offense sentences); § 4A1.2(e) (limiting look-back time period); § 4A1.2(g) (excluding sentences imposed by a summary court martial or Article 15 pro-ceeding); § 4A1.2(h) (excluding foreign sentences); § 4A1.2(i) (excluding tribal court sentences); § 4A1.2(j) (excluding sentences for expunged convictions).

For the reasons mentioned, we affirm the district court's assignment of criminal history points to Nance under § 4A1.1(c) and (d).

### B.

Next, Nance contends that the district court incorrectly concluded that the video and image depicting children other than J.G. were relevant conduct that supported

enhancements under U.S.S.G. §§ 2G2.2(b)(2) and (7)(B). We review a district court's application of the Guidelines de novo and its factual findings for clear error. *United States v. Bowlin*, 534 F.3d 654, 661 (7th Cir. 2008).

Under U.S.S.G. § 1B1.3(a), district courts are instructed to consider uncharged "relevant conduct" in calculating a defendant's offense level. *United States v. Benitez*, 92 F.3d 528, 536 (7th Cir. 1996). Conduct is relevant if it fits within any of the four categories listed in U.S.S.G. § 1B1.3(a). *See United States v. Soy*, 413 F.3d 594, 613 (7th Cir. 2005). One type of relevant conduct includes "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A). In finding that the non-J.G. video and image were relevant conduct, the district court observed that Nance "actively possessed the video and image of child pornography in question at the same time that he was acquiring new images involving J.G[5]." Nance concedes he possessed those materials when he received the images and video of J.G. but argues that not all criminal acts contemporaneous with the conduct underlying the offense of convic-

---

[5] The district court also found that the video and image were relevant conduct under § 1B1.3(a)(2) because they were part of the same course of conduct or common scheme or plan as the offense of conviction. Because we conclude the district court's relevant conduct finding under § 1B1.3(a)(1) was not clearly erroneous, we need not discuss this alternative finding.

tion are necessarily relevant conduct.[6] True enough; we have recognized that the relevant conduct guideline is not boundless and have refused to allow sentencing courts to use it to sweep in uncharged, wholly unrelated criminality that occurred contemporaneously with the charged conduct. *See, e.g.*, *United States v. Taylor*, 272 F.3d 980, 983 (7th Cir. 2001); *United States v. Ritsema*, 31 F.3d 559, 567 (7th Cir. 1994).

But we also have rejected arguments of the sort Nance advances here where the uncharged conduct bears *some* relation to the offense of conviction. For example, in *United States v. Ellison*, 113 F.3d 77 (7th Cir. 1997), we upheld a district court's finding that child pornography possessed contemporaneously with the offense conduct—receipt of child pornography—was relevant conduct. There, the defendant pleaded guilty to receiving

---

[6] It is undisputed that Nance downloaded the non-J.G. video in August 2008, several months before he received the J.G. materials in November 2008. But there is no evidence in the record concerning when Nance acquired the non-J.G. image; it could have been after Nance received the materials depicting J.G. and thus potentially not relevant conduct, at least under § 1B1.3(a)(1). But Nance does not claim the inclusion of that image as relevant conduct was improper *because he did not possess it during the commission of the offense of conviction*, so the argument is waived. Even if the image was improperly found to be relevant conduct, such error was harmless because it would not have affected his Guidelines range: the non-J.G. video was alone sufficient to support the enhancements under U.S.S.G. §§ 2G2.2(b)(2) and (7)(B).

a child pornography video, and the district court enhanced his offense level by four levels under U.S.S.G. § 2G2.2(b)(3) for possessing sadomasochistic child pornography magazines at the time he received the video. *Id.* at 79. On appeal, the defendant conceded that his possession of the magazines was contemporaneous with his receipt of the child pornography video, but argued that, under our decision in *Ritsema*, his possession of those materials was not relevant conduct under § 1B1.3(a)(1). *Id.* at 83. We rejected that argument, distinguishing *Ritsema*: "Ellison's contemporaneous receipt of new pornography and possession of older pornography is far from the unusual type of contemporaneous, yet 'wholly remote' criminality we were uncomfortable including as relevant in *Ritsema*." *Id.* We also observed that the Guidelines' goal of taking into account all uncharged conduct indicating the seriousness of the charged conduct was served by the district court's enhancement, particularly because Ellison's receipt and possession of child pornography violated the same statute and demonstrated his inclination toward sexually exploiting minors.[7] *Id.*

*Ellison* squarely controls our resolution of this issue. Like the defendant in *Ellison*, Nance received child porn and had his offense level enhanced based on the district

---

[7] Since *Ellison* was decided, two other circuits have agreed with its analysis. *United States v. Stulock*, 308 F.3d 922, 926 (8th Cir. 2002); *United States v. Dunlap*, 279 F.3d 965, 966 n.3 (11th Cir. 2002) (per curiam).

court's finding that other child pornography materials he illegally possessed at the time he received the charged materials were relevant conduct. So under *Ellison*, the district court did not err in determining the non-J.G. materials were sufficiently related to the J.G. materials underlying the offense of conviction to be considered relevant conduct and justify enhancement of his offense level under U.S.S.G. §§ 2G2.2(b)(2) and (7)(B). Moreover, the goal of the relevant conduct guide-line—taking into account all germane uncharged conduct demonstrating the seriousness of the offense conduct—is served equally here as in *Ellison*.

## C.

Last, we address Nance's argument that the sentence was procedurally flawed and substantively unreasonable. Our review of the district court's sentencing procedures is de novo, and our review of the substantive reason-ableness of a sentence is for an abuse of discretion. *United States v. Are*, 590 F.3d 499, 530 (7th Cir. 2009).

Nance's only complaint about the procedural propriety of his sentence concerns the district court's statement that it was throwing the Guidelines range "out the win-dow." The Supreme Court instructs that sentencing courts must treat the correctly calculated Guidelines range as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). That much was done here. The district court's calculation of Nance's Guidelines range was correct, and the court acknowledged that it was "us[ing] the Guidelines as a

starting point." It is not enough, however, for a sentencing judge to get his math right; he must also, under § 3553(a)(4), "give respectful consideration to the judgment embodied in the guidelines range that he computes." *United States v. Higdon*, 531 F.3d 561, 562 (7th Cir. 2008). We do not think that the district court's one stray remark suggests it did not adequately consider the Guidelines range. When read in context, the comment simply demonstrates that the court was not treating the Guidelines range as mandatory as *United States v. Booker*, 543 U.S. 220 (2005), forbids, but rather was making an individualized assessment: "Frankly, in this case I throw it out the window *because I think that the sentencing in this case can be uniquely tailored without resorting to a formulaic reliance on numbers*." (emphasis added). Thus we see no error on the procedural side of the sentence.

Regarding the substantive reasonableness of the sentence, because the 180-month term imposed fell within the correctly calculated advisory Guidelines range, we presume it was reasonable. *United States v. Portman*, 599 F.3d 633, 636 (7th Cir. 2010). Because Nance has not rebutted that presumption by demonstrating the sentence was unreasonable in light of the § 3553(a) factors that the district court thoroughly discussed, we find no abuse of discretion.

## III.

In conclusion, we hold that application note 3 to § 2G2.2 creates an exception to the general rule that relevant conduct may not be considered when computing a defen-

dant's criminal history score. Thus, the district court did not err in calculating Nance's criminal history score using his conviction that had been considered as part of a pattern of activity involving the sexual exploitation of a minor under § 2G2.2(b)(5). Nor did the court err in finding that the non-J.G. materials Nance possessed at the time he received the J.G. materials were relevant conduct. And the sentence the court imposed was both procedurally sound and substantively reasonable.

AFFIRMED.