In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1556

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CHRISTOPHER JONES,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 45—**George W. Lindberg**, *Judge*.

ARGUED SEPTEMBER 7, 2010—DECIDED MARCH 15, 2011

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge*. Christopher Jones pleaded guilty to multiple narcotics and weapons offenses, and the district court ordered him to serve a total prison term of 181 months. On appeal, Jones contends that he was deprived of the effective assistance of counsel when the attorney who represented him at sentencing failed to object to a two-level enhancement to his offense level based on his possession of a .22-caliber rifle with an

obliterated serial number. *See* U.S.S.G. § 2K2.1(b)(4) (Nov. 2005).[1] Jones was not charged with the possession of that rifle, as the government had no proof that the rifle had ever moved in interstate or foreign commerce. Jones reasons that absent evidence bringing his possession of the rifle within the authority of the federal government to prosecute, the district court could not consider the rifle in calculating his sentencing offense level for the crimes with which he was charged. However, because Jones's possession of the rifle was prohibited by Illinois law and constituted relevant conduct under the Sentencing Guidelines, it was entirely appropriate for the court to apply the enhancement. His attorney therefore did not deprive Jones of effective representation by posing no objection to the enhancement.

## I.

Jones was approached and ultimately arrested by police in October 2004 after he was observed engaging in what looked like hand-to-hand narcotics sales near an alleyway entrance in Chicago's North Lawndale neighborhood. A search of his person uncovered nine-tenths of a gram of crack and a Desert Eagle semi-automatic pistol. A subsequent search of his residence in a nearby two-flat, conducted with the consent of the building's owner (Jones's great-grandfather) and his

---

[1] As Jones was sentenced in March 2006, all citations unless otherwise noted are to the November 2005 version of the Sentencing Guidelines in effect at the time of his sentencing.

grandmother, with whom he lived in the second-floor apartment, unearthed another 11.4 grams of crack cocaine and nine firearms, among other contraband, in his bedroom. The serial numbers on two of those firearms, a Feg .380 semi-automatic pistol and a .22-caliber rifle, had been defaced.

A superseding indictment returned in July 2005 alleged that Jones had committed six offenses. Counts One through Three related to the crack cocaine and the Desert Eagle pistol that Jones had possessed at the alleyway and charged him respectively with possessing crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), using and carrying the Desert Eagle pistol in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[2] Counts Four through Six were based on the additional cocaine and firearms found in Jones's residence, and respectively charged him with being a felon in possession of eight of the nine firearms found in his bedroom in violation of section 922(g)(1), possessing a firearm (the Feg pistol) with an obliterated serial number in violation of 18 U.S.C. § 922(k), and possessing more than five grams of crack cocaine in violation of 21 U.S.C. § 844. The .22-caliber rife was not cited in support of either the felon-in-possession charge in Count Four or the obliterated serial number charge

---

[2] Jones had prior felony convictions for the distribution of a controlled substance and for the unlawful use of a firearm.

in Count Five, as the government could not prove that the rifle had ever traveled in interstate or foreign commerce. *See* § 922(g)(1) (prohibiting person who has been convicted of felony from, inter alia, possessing any firearm "in or affecting commerce"); § 922(k) (prohibiting receipt or possession of firearm with obliterated serial number that "has, at any time, been shipped or transported in interstate or foreign commerce").

After Jones entered a blind plea of guilty to all six charges, the probation officer conducted an investigation and prepared a presentence report ("PSR" or "report"). In ascertaining the advisory sentencing range specified by the Sentencing Guidelines, the probation officer determined that the highest adjusted offense level applicable to any of the charges was the one which applied to the firearms offenses in Counts Three, Four, and Five—Level 32—and she therefore applied that offense level to all of the charges except the section 924(c) charge set forth in Count Two, which mandated a consecutive prison term of 60 months. *See* § 924(c)(1)(A)(i); U.S.S.G. §§ 3D1.1(b)(1) & 3D1.2, comment. (n.1). The offense level of 32 included a two-point enhancement for possessing a weapon with an obliterated serial number, which the guideline governing firearms-possession offenses identifies as a specific offense characteristic. § 2K2.1(b)(4). The probation officer based that enhancement on the .22-caliber rifle found in Jones's bedroom. In this respect, the probation officer's methodology diverged from the government's own proposed sentencing calculations, which included the same enhancement but based on

the Feg semi-automatic pistol (also found in Jones's bedroom) rather than the .22-caliber rifle. In the probation officer's view, because Jones had been charged in Count Five with possession of the Feg with its defaced serial number, it would be double-counting to apply the defaced serial number enhancement to the group of firearms offenses that included Count Five.[3]

Both parties submitted written objections to the PSR. The government's objections quarreled with the probation officer's methodology in calculating the adjusted offense level of 32 applicable to all charges but for that set forth in Count Two. But the government agreed that 32 was the right offense level. Jones's counsel objected to the two-level enhancement for obstruction of justice that the probation officer had applied based on testimony that Jones had given in support of an unsuccessful motion to quash his arrest and to suppress the evidence obtained pursuant to the arrest. *See* U.S.S.G. § 3C1.1. Jones's counsel voiced no objection to the proposed enhancement pursuant to section 2K2.1(b)(4) for possession of the .22-caliber rifle with the obliterated serial number.

---

[3] The government on appeal has renewed its contention that the enhancement properly could have been based on Jones's possession of the Feg semi-automatic pistol. In light of our conclusion below that it was proper for the district court to impose the enhancement based on Jones's possession of the .22-caliber rifle, we need not address the merits of this alternative argument in support of the enhancement.

A sentencing hearing commenced on February 24 and concluded on March 22, 2006. The district court sustained Jones's objection to the enhancement for obstruction of justice, which brought his offense level to 30; but the court otherwise adopted the probation officer's calculations. A final two-level reduction for acceptance of responsibility pursuant to section 3E1.1(a) further reduced Jones's adjusted offense level to 28. Coupled with a criminal history category of III, that offense level yielded an advisory sentencing range of 97 to 121 months in prison. The district court imposed a sentence at the top of that range, reasoning that although the range itself was consistent with the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), a sentence at the high end of the range was necessary to account for the gravity of Jones's offenses, his "criminal nature," and his "lack of respect for the law." R. 64 at 13. With the addition of the mandatory consecutive sentence of sixty months on Count Two, Jones was ordered to serve a total prison term of 181 months.

Jones's counsel did not file a notice of appeal. Within a year of the entry of judgment, however, and with the assistance of new counsel, Jones filed a motion for collateral relief pursuant to 28 U.S.C. § 2255, contending that he had been denied the effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution when the lawyer who represented him through sentencing failed (among other omissions) to

file a notice of appeal on his behalf.[4] After conducting an evidentiary hearing, the district court granted Jones's motion in part, agreeing that he was deprived of effective representation when his attorney neglected to file a notice of appeal despite Jones's request that he do so. R. 51 at 13-14; *see United States v. Nagib*, 56 F.3d 798, 801 (7th Cir. 1995) (counsel's failure to file notice of appeal on client's instruction is per se ineffective, and prejudice need not be shown). To remedy the Sixth Amendment violation, the court entered an amended judgment imposing the same sentence on Jones, thus opening a new ten-day window in which Jones could file a direct appeal from his conviction and sentence. *See United States v. Mosley*, 967 F.2d 242, 243 (7th Cir. 1992) (proper way to remedy counsel's failure to file notice of appeal is to reenter judgment so as to create new opportunity to appeal) (citing, inter alia, *Page v. United States*, 884

---

[4] In addition, Jones alleged that his counsel was ineffective for failing to challenge the validity of his great-grandfather's and his grandmother's consent to search his residence (and in particular, his bedroom), for not objecting to a Magistrate Judge's recommendation that his motion to quash his arrest and suppress the evidence seized pursuant thereto be denied, and for not negotiating a conditional plea of guilt pursuant to Federal Rule of Criminal Procedure 11(a)(2) that would have preserved his right to challenge the validity of his arrest and the search of his bedroom on appeal. He also made a boilerplate argument that his attorney's performance as a whole deprived him of his right to effective representation. The district court resolved these claims of ineffectiveness against Jones, but they are not raised in this appeal.

F.2d 300, 302 (7th Cir. 1989); *see also United States v. West*, 240 F.3d 456, 460-61 n.3 (5th Cir. 2001).

With the benefit of the relief granted to him pursuant to section 2255, Jones has now appealed his sentence. And here again, he invokes the Sixth Amendment. At bottom, his contention is that the district court improperly calculated his offense level, and the resulting sentencing range, when it applied the two-level enhancement called for by section 2K2.1(b)(4) for the possession of a firearm with a defaced serial number. Jones reasons that because there is no evidence that the .22-caliber rifle underlying that enhancement ever moved in interstate or foreign commerce, the district court could not rely on the rifle in imposing the enhancement. Of course, Jones's sentencing counsel never objected to this enhancement below[5] despite having advance notice by way of the PSR that the court might impose it, thereby

---

[5] Not until the section 2255 proceeding was this issue raised, and even then belatedly. In a footnote to the reply memorandum that Jones submitted in support of his request for section 2255 relief, he added the assertion that his offense level was erroneously enhanced (without objection from his counsel) based on his possession of the .22-caliber rifle, given the lack of proof that the rifle had ever been transported, shipped, or received in interstate or foreign commerce. R. 45 at 7 n.2. The district court rejected this contention summarily in a separate minute order. R. 55. The court indicated that "the appropriate forum to raise any issues related to Mr. Jones' sentence . . . would be via direct appeal to the Seventh Circuit Court of Appeals once an amended judgment and commitment form is entered . . . ." R. 55.

forfeiting, if not waiving, Jones's right to direct appellate review of the enhancement.[6] Jones's challenge to the enhancement is thus encapsulated within a claim that he was deprived of the effective assistance of counsel: Because the enhancement for the obliterated serial

---

[6] If Jones's counsel merely forfeited appellate consideration of this issue, it would still be subject to review in this court, albeit for plain error only. *E.g.*, *United States v. Favara*, 615 F.3d 824, 827 (7th Cir. 2010), *pet'n for cert. filed*, 79 U.S.L.W. 3310 (U.S. Nov. 9, 2010) (No. 10-631). A waiver, on the other hand, would preclude appellate review altogether. *E.g.*, *United States v. Salem*, 597 F.3d 877, 890 (7th Cir. 2010). Whether the failure to raise a particular sentencing objection is appropriately characterized as a forfeiture or waiver of that objection depends on the circumstances of the individual case, including whether counsel had sound reasons not to pursue the issue. *Compare United States v. Brodie*, 507 F.3d 527, 532 (7th Cir. 2007) (finding waiver where counsel stated his client had no further objections to presentence report, and where appellate court satisfied that counsel had sound reason not to raise "near-frivolous" issues), *with United States v. Jaimes-Jaimes*, 406 F.3d 845, 847-49 (7th Cir. 2005) (finding forfeiture where counsel stated that his client had no objections to presentence report, but neither appellate court nor government's counsel could conceive of sound reason for counsel not to object to erroneous sixteen-level enhancement). Given the nature of the claim that Jones has made in this appeal, we need not decide whether the lack of an objection to the sentence enhancement resulted in a forfeiture or a waiver of the issue. Jones has not attempted to raise the propriety of the enhancement as a stand-alone issue and instead has challenged the enhancement solely in the context of his ineffective-assistance claim.

number could not be imposed on the basis of a firearm that is beyond the jurisdictional reach of the federal government, Jones reasons, his counsel was obliged to challenge it; and having failed to do so, he denied Jones of the effective representation to which he was entitled.

## II.

We have noted that Jones's claim for relief is grounded in his Sixth Amendment right to the effective assistance of counsel. To succeed on such a claim, he must show both that his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that he was prejudiced by the subpar representation. *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69 (1984). In order to establish prejudice, he must show that there is a reasonable probability that but for his counsel's mistakes, the result of the proceedings below would have been different, such that the proceedings were fundamentally unfair or unreliable. *Id.* at 687, 691-92, 104 S. Ct. at 2064, 2066-67; *see also Williams v. Taylor*, 529 U.S. 362, 391-93 & n.17, 120 S. Ct. 1495, 1512-13 & n.17 (2000); *Lockhart v. Fretwell*, 506 U.S. 364, 369-372, 113 S. Ct. 838, 842-44 (1993). In the sentencing context, an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief. *See Glover v. United States*, 531 U.S. 198, 121 S. Ct. 696 (2001); *United States v. Reinhart*, 357 F.3d 521 (5th Cir. 2004);

*United States v. Soto*, 132 F.3d 56 (D.C. Cir. 1997); *United States v. Headley*, 923 F.2d 1079, 1083-85 (3d Cir. 1991). *But see also Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) (per curiam) (single error in context of otherwise vigorous advocacy on behalf of defendant must be sufficiently serious to demonstrate ineffective assistance of counsel).

Claims of ineffective assistance of trial-level counsel, because they typically require an assessment of counsel's strategic decisions and various other considerations that are not part of the record in the usual trial court proceeding, are in most instances not claims that are amenable to resolution on direct appeal (which this appeal is, notwithstanding its belated character). *See Massaro v. United States*, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 1694 (2003); *United States v. Recendiz*, 557 F.3d 511, 531-32 (7th Cir. 2009). Only in the rare case, where the deficiency of an attorney's performance is beyond dispute and the prejudice is obvious from the existing record, might it be possible to grant relief on such a claim without further evidentiary development of the record in a collateral proceeding. *E.g., Headley*, 923 F.2d at 1083-84. *But see also United States v. Harris*, 394 F.3d 543, 547 (7th Cir. 2005) (noting that this court has yet to grant relief on such a claim in a direct appeal); *United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir. 1997) ("This Court's reluctance to consider ineffective assistance claims on direct appeal stems, of course, from the fact that such claims are very unlikely to find any factual support in the trial record and an adverse determination on direct appeal will be res judicata on any subsequent

collateral attack. As we have so often put it, a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose.") (internal quotation marks and citations omitted).

Jones's counsel is right in suggesting that his ineffectiveness claim is ripe for resolution on the limited record before us, but that is because it is clear that his claim lacks merit. As we have noted, the theory underlying his claim is that it was an obvious error for the district court to impose the enhancement for the defaced serial number based on Jones's possession of the .22-caliber rifle, given the government's inability to prove that the rifle ever moved in interstate commerce. Thus, Jones reasons, if his lawyer had only spoken up in opposition to the enhancement rather than remaining silent, the district court would have recognized that the enhancement was not proper and sustained the objection. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision."). But the premise of his claim, that a sentence enhancement for a specific characteristic of the offense can only be based on conduct that constitutes a federal crime, turns out to be erroneous.

Had the government charged Jones with possessing a firearm with a defaced serial number, as it did with respect to the Feg semi-automatic pistol, proof that the firearm had some link to interstate or foreign commerce of course would have been indispensable to establish

the federal government's jurisdiction over the offense under the Commerce Clause. U.S. CONST. art. 1, § 8, cl. 3; *see United States v. Lopez*, 514 U.S. 549, 561, 115 S. Ct. 1624, 1631 (1995) (noting importance of jurisdictional element of statute "which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce"); § 922(k) (proscribing the possession of a firearm with obliterated serial number so long as said firearm "has, at any time, been shipped or transported in interstate or foreign commerce"); *United States v. Baer*, 235 F.3d 561, 563 (10th Cir. 2000) (finding that jurisdictional element of section 922(k) satisfies *Lopez*, and collecting cases); *United States v. Bell*, 70 F.3d 495 (7th Cir. 1995) (similarly concluding that jurisdictional element of § 922(g)(1) also satisfies *Lopez*).

But Jones was not charged with possession of the rifle. He was charged instead with possessing the other eight firearms found in his bedroom, as well as the Desert Eagle pistol found on his person, and the jurisdictional foundation for those offenses is not challenged. His uncharged possession of the rifle was taken into consideration at sentencing as a specific offense characteristic which increased his offense level (and the resulting sentencing range) for those crimes. And the ability to enhance one's sentence based on uncharged conduct does not turn on whether that conduct could have been prosecuted in federal court.

In arriving at an appropriate sentence, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider,

or the source from which it may come. " *United States v. Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 591 (1972); *see* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The specific offense characteristics set forth in Chapter Two of the Sentencing Guidelines and the adjustments set forth in Chapter Three serve as guideposts helping to establish where within the broad statutory range of punishment a particular defendant's sentence ought to fall, in the judgment of the Sentencing Commission. As such, they do not represent separate crimes but rather sentencing factors, which are exempt from many of the constraints that govern formal criminal charges. *See United States v. Watts*, 519 U.S. 148, 154, 117 S. Ct. 633, 636 (1997) ("sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction") (citing *Witte v. United States*, 515 U.S. 389, 402-03, 115 S. Ct. 2199, 2207-08 (1995)). Consequently, findings as to these factors may be based on uncharged conduct, *Witte*, 515 U.S. at 402-03, 115 S. Ct. at 2207-08, and for that matter on conduct of which the defendant has been acquitted, *id.* at 155-57, 117 S. Ct. at 637-38.

The Guidelines instruct the court to consider all "relevant conduct" in determining the base offense level and the specific offense characteristics and adjustments identified in Chapters Two and Three. U.S.S.G.

§ 1B1.3(a). "At its most basic, conduct must be 'criminal or unlawful' to constitute relevant conduct." *United States v. Schroeder*, 536 F.3d 746, 752 (7th Cir. 2008) (quoting *United States v. Frith*, 461 F.3d 914, 917 (7th Cir. 2006)). Beyond that, it must fall into one of the four categories of relevant conduct identified by the Guidelines. *See* § 1B1.3(a)(1)-(4); *United States v. Nance*, 611 F.3d 409, 415 (7th Cir.) (citing *United States v. Soy*, 413 F.3d 594, 613 (7th Cir. 2005)), *cert. denied*, 131 S. Ct. 680 (2010). The first of these categories, and the one that is most obviously applicable here, includes all acts and omissions committed by the defendant during the offense of conviction. § 1B1.3(a)(1)(A). Despite its broad scope, this provision does not authorize the sentencing court "to sweep in uncharged, wholly unrelated criminality that occurred contemporaneously with the charged conduct." *Nance*, 611 F.3d at 416 (citing cases). However, so long as the contemporaneous, uncharged conduct has "*some* relation" to the crime of conviction, it may appropriately be treated as relevant conduct. *Id.* (emphasis in original); *see also* § 1B1.3(a)(2) (as to offenses which § 3D1.2(d) would require to be grouped for sentencing purposes, relevant conduct includes all acts and omissions by defendant that were "part of the same course of conduct or common scheme or plan as the offense of conviction"); § 3D1.2(d) (indicating that firearms offenses governed by § 2K2.1 must be grouped).

The 2005 Guidelines (which was the version in effect at the time of Jones's sentencing) called for a two-level increase in the defendant's offense level "[i]f any firearm . . . had an altered or obliterated serial num-

ber . . . ." § 2K2.1(b)(4).[7] (Effective November 1, 2006, roughly eight months after Jones was sentenced, the guideline was amended to specify a four-level increase, in order to "reflect[ ] both the difficulty in tracing firearms with altered or obliterated serial numbers and the increased market for these types of weapons." U.S.S.G. App. C, Amendment 691.) In view of the Guidelines' directive that relevant conduct be considered in ascertaining specific offense characteristics such as this one, § 1B1.3(a), the enhancement could be applied not only to the firearms that Jones was charged with possessing, but to any additional firearm that he possessed unlawfully during the charged offenses, § 1B1.3(a)(1)(A), so long as there was "some relation" between his possession of the uncharged firearm and the other offenses. *Nance*, 611 F.3d at 416.

Jones possessed the .22-caliber rifle with the obliterated serial number during the offenses to which he pleaded guilty.[8] The rifle was found in the same place—Jones's

---

[7] The commentary to the guideline, § 2K2.1, comment. (n.1), incorporates the definition of "firearm" set forth in 18 U.S.C. § 921(a)(3), which in relevant part provides that the term includes "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," although antique firearms are excepted.

[8] As Jones has pointed out in the briefing, because he was never charged with possession of the .22-caliber rifle, he did not admit possession of the rifle when he pleaded guilty.

(continued...)

bedroom—as the eight other firearms charged in Count Four of the superseding indictment (felon in possession of a firearm), and of course Jones possessed it at the same time as he possessed those other eight firearms and, for that matter, at the same time as each of the five other offenses alleged in the indictment. The fact Jones had a pistol (the Desert Eagle) on his person as he was selling crack cocaine nearby, not to mention the additional crack discovered in his bedroom along with the other guns, suggests that his possession of firearms, including the rifle, was connected to his drug dealing as well. There was thus an obvious and meaningful relationship between Jones's possession of the rifle and the offenses of conviction. *See United States v. Santoro*,

---

[8] (...continued)

However, there is no dispute that the rifle was found in his bedroom along with the eight other firearms which were referenced in the indictment and which he did admit to possessing in his guilty plea. Based on the discovery of the .22-caliber rifle in Jones's bedroom and Jones's formal admission that he possessed the other firearms found in the same location, the probation officer had a reliable and sufficient basis on which to find that Jones also possessed the rifle. And in the absence of an objection to that finding, the district court was entitled to adopt and rely upon it at sentencing. *E.g.*, *United States v. Moreno-Padilla*, 602 F.3d 802, 808-09 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 897 (2011). Indeed, it is clear from the briefs that Jones has no quarrel with the proposition that he possessed the rifle. His sole contention is that there is no evidence he ever possessed the rifle in or affecting interstate or foreign commerce.

159 F.3d 318, 321 (7th Cir. 1998) ("'the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution'" pursuant to § 1B1.3(a)(2)) (quoting *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995)); *United States v. Wallace*, 280 F.3d 781, 785 (7th Cir. 2002) (uncharged possession of assault rifle by felon four weeks after charged possession of revolver properly was part of same course of conduct under § 1B1.3(a)(2)); *United States v. Phillips*, 516 F.3d 479, 483-84 (6th Cir. 2008) (coll. similar cases); *see also Nance*, 611 F.3d at 416-17 (defendant's uncharged possession of media containing pornographic images of children at same time as his charged receipt of other pornographic materials constituted relevant conduct under § 1B1.3(a)(1)(A)) (following *United States v. Ellison*, 113 F.3d 77, 83 (7th Cir. 1997) (defendant's uncharged possession of magazines containing child pornography contemporaneously with his charged receipt of video containing child pornography in sting operation was relevant conduct under § 1B1.3(a)(1)(A))).

Jones's possession of the rifle was also unlawful. As there is no evidence that the rifle ever moved in interstate or foreign commerce, we must assume that federal law did not prohibit Jones from possessing the weapon. But Illinois law separately prohibits—and did prohibit at the time of Jones's offenses in October 2004—both the possession of a firearm by a convicted felon as well as the possession of a firearm with an obliterated serial number, regardless of whether the firearm had any link to interstate or foreign commerce. *See* 720

ILCS §§ 5/24-1.1(a) (2004) and 5/24-5(b) (as amended effective Aug. 11, 2004 by § 5 of P.A. 93-906). Jones's possession of the rifle was thus doubly proscribed, albeit under state rather than federal law, rendering his unlawful possession of the rifle of a piece with his possession of the other firearms.

The fact that Jones's possession of the rifle constituted a state rather than a federal crime does not preclude its treatment as relevant conduct. The Guidelines themselves do not define relevant conduct so as to categorically exclude state offenses. *See* § 1B1.3(a). Only when a state offense has already been punished by a state court might it be excluded from consideration as relevant conduct. *See* § 1B1.3, comment. (n.8). And courts have repeatedly approved the consideration of uncharged state offenses as relevant conduct in federal court. *See United States v. McElroy*, 587 F.3d 73, 88-89 (1st Cir. 2009) (Ripple, J., sitting by designation) (unpaid state taxes); *United States v. Maken*, 510 F.3d 654, 657-60 (6th Cir. 2007) (unpaid state taxes); *United States v. Baucom*, 486 F.3d 822, 829 (4th Cir. 2007) (unpaid state taxes), *vacated on other grounds by Davis v. United States*, 552 U.S. 1092, 128 S. Ct. 870 (2008); *United States v. Martin*, 157 F.3d 46, 51-52 (2d Cir. 1998) (possession of property stolen from local businesses and which had not yet been transported in interstate commerce); *United States v. Powell*, 124 F.3d 655, 664-66 (5th Cir. 1997) (unpaid state taxes); *United States v. Dickler*, 64 F.3d 818, 830-31 (3d Cir. 1995) (fraudulent bids on repossessed vehicles which were submitted to banks prior to effective date of federal statute under which defendants were charged, subject to condition

that government could identify some other federal or state statute rendering such bids illegal); *United States v. Newbert*, 952 F.2d 281, 284 (9th Cir. 1991) (falsified petty cash vouchers which may have only violated state law in absence of evidence they affected contracts with U.S. government); *see also United States v. Barringer*, 248 Fed. Appx. 754, 755 (7th Cir. 2007) (nonprecedential decision) (concluding it would be frivolous for counsel to argue that district court erred in considering as relevant conduct uncharged vandalism of private vehicles, which could only have been charged as a state crime; "nothing in the sentencing guidelines precludes the court from considering an uncharged state offense as relevant conduct"); *United States v. Johnson*, 324 F.3d 875 (7th Cir. 2003) (rejecting defendant's contention that his state narcotics-conspiracy conviction should have been considered as relevant conduct rather than part of his criminal history, reasoning that it was not sufficiently related to defendant's federal charge of distributing crack cocaine given the differences in time, narcotics involved, and modus operandi, but drawing no distinction between state and federal crimes in reaching this conclusion); *United States v. Schilling*, 142 F.3d 388, 394 (7th Cir. 1998) (noting without discussion that defendant was sentenced on basis of unpaid state as well as federal taxes). As the Second Circuit summarized in *Martin*, "[A] federal district court may consider any relevant conduct when sentencing a defendant, whether or not the conduct is a federal crime. In the context of U.S.S.G. § 1B1.3(a), jurisdictional considerations are not relevant to a defendant's criminal responsibility." 157

F.3d at 51 (citations omitted). Thus, the lack of evidence that the .22-caliber rifle ever crossed state or international boundaries is irrelevant; Jones's possession of the rifle need not have been within the power of the federal government to prosecute in order for it to be considered relevant conduct.[9]

---

[9] As Jones's counsel points out, the government never made this particular argument below, when Jones was sentenced. (Recall that the government proposed using Jones's possession of the Feg semiautomatic pistol, which also had a defaced serial number, rather than the .22-caliber rifle as the basis for the enhancement.) But that omission does not prevent the government from making the argument in the present context. Jones's claim of ineffective assistance requires us to assess whether his counsel should have objected to the enhancement and whether the failure to object prejudiced him. This requires an after-the-fact assessment of what arguments could have been made for and against the enhancement. In this context, the government is free to raise arguments that it did not raise at the time of Jones's sentencing—when, after all, the enhancement met with no objection. To the extent that the government is expanding upon or adding to the arguments that it raised at Jones's sentencing in support of the enhancement for the obliterated serial number, it is doing no more than Jones has done in contending that his counsel was obliged to object to that enhancement.

As we have noted, Jones did belatedly contend in the section 2255 proceeding that the enhancement was improperly imposed (without objection from his counsel). *See supra* n.5.

(continued...)

It is thus apparent that Jones's counsel did not default on his professional obligation to Jones by not objecting to the two-level enhancement for possessing the rifle with its defaced serial number. Jones's uncharged possession of the rifle constituted relevant conduct which was entirely appropriate for the district court to consider in setting Jones's offense level.

## III.

Jones has not shown that his counsel's representation of him at sentencing was objectively deficient or that he was prejudiced by any such deficiency. The sentence enhancement that the district court imposed without objection based on Jones's uncharged possession of a .22-caliber rifle with a defaced serial number was proper despite the lack of proof that the rifle ever moved in interstate commerce such that Jones's possession of that rifle constituted a federal crime. Unlawful conduct need not be chargeable in federal court in order for it to constitute relevant conduct under the Sentencing Guidelines.

AFFIRMED

---

[9] (...continued)
But the issue was never fully aired even in that proceeding given that it was first raised in a footnote to the reply memorandum, which was the last brief filed.

---

3-15-11