In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1467

JOE FREEMAN,

*Petitioner-Appellant*,

*v.*

NEDRA CHANDLER, Warden,
Dixon Correctional Center,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-C-2927—**Virginia M. Kendall**, *Judge*.

ARGUED MARCH 31, 2011—DECIDED JUNE 20, 2011

Before CUDAHY, POSNER and MANION, *Circuit Judges*.

CUDAHY, *Circuit Judge*.  Petitioner Joe Freeman appeals from the district court's denial of his Rule 60(b) motion as a successive habeas corpus petition over which the court lacked jurisdiction. Whether or not his motion may be treated as a successive petition, we nevertheless elect to affirm the denial of habeas relief on the merits.

## I. Background

### A. Facts

We briefly outline the facts relevant to our considera-
tion of Freeman's habeas petition. In so doing, we rely
on the Illinois Appellate Court's discussion on Freeman's
direct appeal,[1] which we may presume correct pursuant
to 28 U.S.C. § 2254(e)(1).

The relevant events began at the Cook County Criminal
Courts Building on California Avenue, where Freeman
was facing charges of aggravated battery and attempted
murder. The events underlying those charges occurred
on June 27, 2000, and the victim was Charles Gregory.
On November 8, 2000, Freeman visited the courthouse,
apparently to check the status of that case. Charles
Gregory was there as well with his friend Richard Tyler.
An argument erupted, wherein Freeman accused Gregory
of pressing a false attempted murder charge. Gregory
left the courthouse with Tyler, and as they were walking
on the sidewalk a car pulled up alongside them and
Freeman emerged. Freeman shot Gregory three times,
hitting his chest, forearm and shoulder; Tyler escaped.
In connection with this second attempt on Charles Greg-
ory's life, Freeman was charged with attempted murder
and tried in the Illinois Circuit Court for Cook County.

---

[1] The same court's subsequent opinion in Freeman's post-
conviction proceeding does not contain a discussion of
the facts, but only procedural matters. Consequently, we rely
on the court's initial account of the facts, which has never
been questioned in later adjudications.

(For reasons apparently irrelevant to our case, the state *nolle prosequied* Freeman's initial assault and attempted murder charges.)

### B. Procedural History

Freeman's Cook County bench trial was marked by the procedural oddity that his counsel testified in his defense. This occurrence is the focal point of Freeman's habeas case, so we recount the circumstances in detail.

One of Freeman's two attorneys, Robert Nemzin, testified to an event that allegedly occurred at the California Avenue courthouse on November 8 (the same day as the shooting underlying the present case) while Nemzin was serving as counsel to Freeman with respect to Freeman's initial assault and attempted murder charges. Allegedly, Charles Gregory approached Nemzin and stated, "[t]here [are] two forms of compensation. Either, one, your client can go to the joint, or the other is open for negotiation. What's the deal?"

Nemzin continued to represent Freeman in connection with his attempted murder charge for the November 8 shooting. At that trial, Nemzin proposed to testify about his November 8 interaction with Gregory, and the judge decided to allow it. Nemzin's co-counsel and law partner, Mr. Hickey, elicited testimony related to Nemzin's interaction with Gregory. Nemzin also testified in relation to his possession of a couple of McDonald's receipts, significant in connection with Freeman's defense.

Following Nemzin's testimony, Nemzin conducted direct examination of Freeman. But before Freeman

testified in his own defense, the judge engaged in a lengthy colloquy with him, which we reproduce in relevant part:

> The Court: Mr. Freeman, you want Mr. Nemzin to continue as your attorney.
>
> Freeman: Yes.
>
>               * * *
>
> The Court: No complaints about Mr. Hickey or Mr. Nemzin?
>
> Freeman: No, your Honor.
>
>               * * *
>
> The Court: No complaints, whatsoever, about Mr. Nemzin being a witness and now acting as your attorney?
>
> Freeman: No, your Honor.

Freeman was convicted of attempted murder, and the court sentenced him to a 25-year term of incarceration.

Freeman appealed directly from his bench trial, raising *inter alia* the argument that there had been no proper waiver of conflict-free counsel. The state appellate court affirmed. No. 1-03-0059 (Ill. App. Ct. July 27, 2004). The Illinois Supreme Court denied him leave to appeal. *People v. Freeman*, 213 Ill.2d 566 (Ill. 2005). Freeman initiated post-conviction proceedings in the Circuit Court for Cook County, but that court denied him relief, ruling that his claims were barred by *res judicata*. The appellate court affirmed, No. 1-05-1430 (Ill. App. Ct. May 16, 2006), and the Illinois Supreme Court again declined to hear the case, 222 Ill.2d 584 (Ill. 2006).

Freeman then filed a federal habeas corpus petition in the district court in May of 2007. In his habeas petition prepared by counsel, Freeman did not articulately complain about deprivation of conflict-free counsel. The one indicated reason he urged for granting the habeas petition was that "[t]he [Illinois] Appellate Court erred when it held defendant knowingly waived counsel of his choice." But later in his discussion, he also stated, "[t]he conversation between the court and the defendant did not constitute a sufficient knowing and intelligent waiver of defendant's right to a conflict-free counsel and of counsel of his choice."

The district court denied Freeman's habeas petition. *Freeman v. Hulick*, No. 07-CV-2927, 2009 U.S. Dist. LEXIS 55632 (N.D. Ill. June 29, 2009). In so doing, the court took an ambivalent posture with respect to Freeman's conflict-free counsel argument. In its second footnote, the court stated, "Freeman's situation seems better suited to an argument that Freeman did not properly waive his right to conflict-free counsel. This is not, however, the issue that Freeman, who is represented by counsel, has raised." One would expect that this aside would be the last mention of the supposedly unpreserved issue. But the court went on to discuss the substance of Freeman's conflict-free counsel argument for several paragraphs, stating for instance, "although an attorney acting as both defense counsel and as a witness is problematic, Nemzin's potential conflict of interest was minimal." This discussion appeared under a heading entitled, "Waiver."

Freeman filed a *pro se* motion pursuant to Federal Rule of Civil Procedure 60, "Relief from Judgment or Order," alleging that his attorney had failed to properly raise the issue of conflict-free counsel, and he wished the court to decide it. The court ruled that the motion was a successive petition within the meaning of 28 U.S.C. § 2244(b), because it asserted new claims of errors in Freeman's state conviction but was not based on new facts or law. The court therefore ruled that it lacked jurisdiction and denied his requested relief.

We granted Freeman a certificate of appealability from the denial of his self-styled Rule 60(b) motion on the following issues:

> (1) Whether Freeman's Rule 60(b) motion was an unauthorized successive collateral attack;
>
> (2) Whether the district court should have reopened the judgment on the ground that it mistakenly failed to identify all of Freeman's claims; and
>
> (3) Whether Freeman was denied his right to conflict-free counsel.

## II. Analysis

The Supreme Court has recently visited the question whether a Rule 60(b) motion for "Relief from Judgment" is properly treated as a successive petition in habeas cases in *Gonzales v. Crosby*, 545 U.S. 524 (2005). The Court noted that the Rules of Civil Procedure apply in habeas proceedings only to the extent they are not inconsistent

with federal statutory provisions and rules. *Id.* at 529 (citing 28 U.S.C. § 2254 Rule 11). So where a Rule 60(b) motion raises arguments forbidden by 28 U.S.C. § 2244(b)(1) or (b)(2), it will amount to an impermissible successive petition and the district court will lack jurisdiction. *Id.* at 530-32. Were this not the case, prisoners would be able to use Rule 60(b) to circumvent statutory limitations on successive applications that are integral to federal habeas law. *Id.* at 532. However, not every Rule 60(b) motion is forbidden: "A motion that . . . challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court . . . ." *Id.* at 538; *see also Peach v. United States*, 468 F.3d 1269, 1271 (10th Cir. 2006).

Here, we will not look past the district court's express statement that Freeman had not raised the question of conflict-free counsel. We therefore can properly assume that the court did not decide the issue. It is true that the court's discussion looks very much like an analysis of conflict-free counsel, but courts commonly discuss matters they do not decide. We can properly hold that the district court treated the question of conflict-free counsel as waived.

But was the district court correct? Did Freeman successfully raise the issue of conflict-free counsel in his habeas petition? As noted, Freeman most prominently highlighted the question of counsel of choice, and not conflict-free counsel, in his petition. But conflict-free counsel was also referenced in the petition, if inconspicu-

ously. The state discussed conflict-free counsel through-out eleven pages of its answer, so there can be no argument that it was lulled into believing that Freeman was not arguing conflict-free counsel and was thereby prejudiced. And the district court discussed the merits of Freeman's conflict-free counsel theory in its memorandum. In short, the question of conflict-free counsel received attention from everyone involved in Freeman's habeas case, which suggests it was not waived. And, if not waived, the district court should have addressed this argument fully on the merits. There-fore, the district court should not have denied Freeman's Rule 60(b) motion. The motion correctly observed that the district court had overlooked one of his arguments for habeas relief. Hence, the motion was not a successive habeas petition. *See Gonzales*, 545 U.S. at 538.

Ordinarily the district court should rule on the merits of habeas petitions in the first instance, *see, e.g.*, *Holleman v. Duckworth*, 155 F.3d 906, 912 (7th Cir. 1998), but we nonetheless have discretion to reach the merits of a habeas claim although they were not first considered by the district court, *see Kaczmarek v. Rednour*, 627 F.3d 586, 595 (7th Cir. 2010); *Sprosty v. Buchler*, 79 F.3d 635, 645-46 (7th Cir. 1996). And the district court's discussion, though legally ineffectual, certainly provides a preview of how it might be expected to treat Freeman's conflict-free counsel argument on remand. Therefore, in view of the discreteness of Freeman's grievance and the com-pleteness of the record before us and in the interest of judicial economy, we elect to reach the merits.

We agree that defense counsel's conflict of interest can violate a defendant's Sixth Amendment right to effective assistance of counsel. *See United States v. Adkins*, 274 F.3d 444, 453 (7th Cir. 2001) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980)). But a knowing and voluntary waiver of the right to conflict-free counsel is effective, and will foreclose later arguments premised on this right. *See United States v. Lowry*, 971 F.2d 55, 60 (7th Cir. 1992). Generally, "for a defendant's waiver to be valid, the judge need only 'inform each defendant of the nature and importance of the right to conflict-free counsel and ensure that the defendant understands something of the consequences of a conflict.'" *United States v. Turner*, 594 F.3d 946, 952 n.1 (7th Cir. 2010) (quoting *United States v. Flores*, 5 F.3d 1070, 1078 (7th Cir. 1993)).

The state points to the district court's language to the effect that Freeman effectively waived any conflict-free counsel argument, during his colloquy with the trial judge. And on direct appeal, the state appellate court found Freeman had waived the argument. But despite these contrary analyses, we shall assume without deciding that Freeman did not waive the issue. This is not because we doubt the prior rulings on this issue, but simply because we prefer to consider the merits instead of deciding the case on procedural grounds. Therefore, solely for purposes of analysis, we shall treat Freeman's conflict-free counsel argument as preserved.

The question of what Freeman must show to secure relief because of a conflict of interest on the part of defense counsel is a thicket, but here a clear answer

emerges. The hitch is that there are two frameworks for analyzing the question, one of which derives from proceedings wherein counsel represents multiple clients, and one of which considers whether counsel was ineffective.

Under the former framework, defense counsel is said to labor under an "actual" conflict of interest. If there is any "adverse effect" on the attorney's performance, prejudice is presumed and the defendant's argument prevails. *See Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). This *Cuyler* framework applies "if the defense counsel was faced with a choice between advancing his own interests above those of his client." *Hall*, 371 F.3d at 973 (citing *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994)). We have also said that it applies "only where there is a danger that [counsel] would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct." *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir. 1990) (citation omitted).

But where this *Cuyler* precedent does not apply, the defendant must carry the heavier burden of showing that the conflict resulted in ineffective assistance under the familiar framework of *Strickland v. Washington*, 466 U.S. 668 (1984). This means showing that counsel's representation fell below an objectively reasonable standard of care, and that there is a reasonable probability that but for counsel's unprofessional errors the trial outcome would have been different. *Id.* at 687, 694.

Freeman's case does not come within the less demanding *Cuyler* line, because his counsel was not "actually" conflicted in the sense of being forced to choose between himself and his client. Indeed, Nemzin testified favorably to Freeman by impugning the credibility of the complaining witness. *Cf. Enoch v. Gramley*, 70 F.3d 1490, 1496-97 (7th Cir. 1995) (an actual conflict may exist where counsel faces the prospect of having to cross-examine a former client); *Stoia*, 22 F.3d at 772 (an actual conflict would exist where vigorous representation might lead to revelation of counsel's subornation of perjury in another case, and counsel's violation of a federal plea agreement); *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984) (counsel was actually conflicted where he had been involved in the same criminal activity as the defendant); *Solina v. United States*, 709 F.2d 160, 164-65 (2d Cir. 1983) (an actual conflict existed where defense counsel's vigorous representation might have increased the likelihood of the revelation that counsel was not admitted to practice law).

Therefore, Freeman's conflicted counsel argument must proceed pursuant to *Strickland*. The first prong in the *Strickland* analysis is whether counsel's performance fell below an objectively reasonable standard of care. It is not at all likely that Nemzin's performance did: much of the responsibility for allowing a defense attorney to testify on behalf of his client belongs to the circuit court. That Nemzin prevailed on the court to allow him to testify speaks to his persuasiveness, although it may reflect poorly on his command of criminal proce-

dure (and the Illinois Rules of Professional Conduct[2]). But the rules of ethics are not necessarily coextensive with *Strickland*'s objectively reasonable standard of care.[3] This question being legally murky and involved, we do not decide it, and instead we proceed to the second *Strickland* prong.

The second *Strickland* inquiry goes to the heart of this habeas case, by asking whether, but for counsel's unprofessional errors, it is reasonably probable that the outcome of the trial would have been different. In other words, Freeman's appeal boils down to the question whether Nemzin's testimony made any real difference in his trial. In view of the record before us (including the state appellate court's adjudication of the issue, to

---

[2] Under Rule 3.7(a), "[a] lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client."

[3] *See Nix v. Whiteside*, 475 U.S. 157, 165 (1986) ("Under the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."); *see also* John M. Burkoff, CRIMINAL DEFENSE ETHICS, § 6.1 (2d ed. 2010) ("[A] criminal defendant's Sixth Amendment right to effective, conflict-free counsel is not coextensive with a defense attorney's ethical obligation to respond to—and avoid—conflicts.") (internal parentheses omitted).

which we owe deference[4]), we are quite confident
that it did not. As discussed above, Nemzin testified
favorably to Freeman, and the state, not Freeman,
objected to his dual role. Nemzin's testimony im-
pugned the credibility of the complaining witness,
and it was fairly effective in doing so: the judge
indicated that Nemzin's testimony was plausible. But
this simply did not change the outcome in view of the
other evidence of Freeman's guilt. There was no chance
of Nemzin's dual role confusing a jury because
Freeman's was a bench trial. *Cf. United States v. Solis*,
923 F.2d 548, 551 (7th Cir. 1991) (likelihood of confu-
sion relating to dual role of eyewitness and expert
witness is diminished in a bench trial context). And
as a final note, we observe that Freeman himself is con-
spicuously unable, despite his best efforts in his brief,
to articulate a credible theory that he was prejudiced
by Nemzin's dual role.

We may affirm on any grounds present in the record.
*See Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993).
Despite the district court's apparently erroneous denial

---

[4] On direct appeal, the state appellate court held that Freeman
could not show that he was prejudiced by Nemzin's dual
representation. We owe this determination deference, such
that the question we ask on habeas review is "whether the
state court's determination that such a probability [of
prejudice] does not exist is *reasonable*." *Ellison v. Acevedo*,
593 F.3d 625, 633 (7th Cir. 2010) (emphasis added).

of Freeman's Rule 60(b) motion, Freeman is not entitled to habeas relief. Accordingly, we AFFIRM.