In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3183

BYRON BLAKE,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cv-555-GPM—**G. Patrick Murphy**, *Judge.*

ARGUED JANUARY 22, 2013—DECIDED JULY 25, 2013

Before RIPPLE and ROVNER, *Circuit Judges*, and BARKER, *District Judge.**

BARKER, *District Judge.* This appeal brought by Petitioner Byron Blake ("Blake") seeks our review of the district court's denial of his habeas petition, brought pursuant to 28 U.S.C. § 2255 to challenge his convic-

---

* The Honorable Sarah Evans Barker, United States District Court for the Southern District of Indiana, sitting by designation.

tions and sentence. Blake's primary legal issue is that each of his three (actually four) prior attorneys, respectively, subjected him to ineffective assistance during the various stages of his prosecution and appeal. Resolving these claims requires a detailed factual explication, but the controlling legal principles reflect well settled law. Having carefully reviewed Blake's claims, we are persuaded that the District Court's denial of his petition for habeas relief was well founded; thus, we affirm the ruling(s) below.

## I. BACKGROUND

On October 19, 2006, a federal grand jury convened in the Southern District of Illinois returned a one-count indictment against Blake and a co-defendant charging them with the offense of conspiracy to distribute and possess cocaine in violation of 21 U.S.C. § 846. Blake retained attorneys Frank R. Fabbri ("Fabbri") and Nick A. Zotos to represent him, and they entered their appearances on October 30, 2006. A trial date was initially set for January 9, 2007, well within the seventy days required by the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq*.

Unbeknownst to Blake (and apparently only to Blake) at the time, Mr. Fabbri was, himself, under criminal investigation by federal law enforcement officers for a felony offense unrelated to the charges against Blake. To avoid prosecutive conflicts of interest, the Fabbri investigation was being supervised by an assistant United States Attorney from the Central District of Illi-

nois. Blake's case was overseen by Assistant United States Attorney Ranley Killian in the Southern District of Illinois.

At the time the Blake prosecution commenced, AUSA Killian was apparently aware that an ongoing criminal investigation was underway targeting Mr. Fabbri, but Killian's knowledge was limited since he and the other prosecutors in his district had been "screened off" from the Fabbri investigation to avoid conflicts of interest. The record reflects that Killian possessed no information regarding the merits of the Fabbri investigation. However, he and certain other AUSAs from the Southern District of Illinois had been informed that there was a possibility that they would be called to testify as witnesses in the Fabbri prosecution, if an indictment were returned and the case went to trial. Blake maintains but without citing any evidentiary support that despite the "screening off" of the Southern District of Illinois prosecutors from the Fabbri prosecution, the lawyers had nonetheless communicated with one another about his case as well as the Fabbri investigation. In the absence of any evidence to corroborate his suspicion, we treat this assertion as merely that – a suspicion.

Approximately one week following the entry by Mr. Fabbri of his appearance on behalf of Blake, that is, on November 8, 2006, Blake submitted to a proffer session with the government investigators which interview had been arranged or at least consented to by his counsel. Blake's co-defendant also had participated in a proffer session with law enforcement agents six days

prior.[1] Blake points out that his proffer session occurred before Mr. Fabbri had conducted a review of the government's discovery materials, so Mr. Fabbri's advice that he submit to that interview apparently was based simply on the nature of the allegations asserted in the indictment against Blake, or Mr. Fabbri's sense of the strength of the government's case or, perhaps, because Blake's co-defendant had already done likewise, or some combination of these factors. The record is undeveloped as to Mr. Fabbri's thinking or intentions.

On December 15, 2006, Mr. Fabbri filed a motion to continue the January 9, 2007 trial date. On December 18th, at a final pretrial conference conducted by the district judge, Blake, apparently learning for the first time that his counsel was seeking a continuance of the trial, emphatically objected to any continuance, stressing that he absolutely wanted to go to trial on January 9th, as currently scheduled. Faced with his client's objection, Mr. Fabbri withdrew the motion for continuance.

Following the pretrial conference on December 18, 2006, AUSA Killian learned that an indictment of Mr. Fabbri was imminent, prompting him to immediately withdraw from further responsibility for or involvement in Blake's prosecution. AUSA Killian was replaced on the Blake prosecution by AUSAs Garrison and Boyce. Two days thereafter, on December 20, 2006, the two newly assigned AUSAs filed a sealed motion with the district court seeking a judicial determination as to

---

[1]   A-02.

whether Mr. Fabbri's representation of Blake presented a conflict of interest. In that motion, the government stated that it "believe[d] that Attorney Fabbri has an actual, or at least a significant potential conflict of interest in representing Byron Blake,"[2] and thus it brought the issue to the judge's attention seeking a determination as to the nature and extent of the conflict, if any. The government also stated in its motion that while the motion could have been brought "at an earlier point in time," the government "until recently believed that the case was in a posture where there was more time prior to trial of this matter, and that the investigation of Attorney Fabbri would have proceeded to a prosecution by that point in time which would likely have self-resolved the issue."[3]

On December 19, 2006, the newly assigned prosecutors filed a sentencing enhancement notification under 21 U.S.C. § 851(a), informing the court (and Blake) of the government's intention to invoke at sentencing Blake's prior controlled substance offense conviction, if a conviction ensued.

The conflict of interest motion filed by the government was promptly considered by the district judge at a hearing convened on December 28, 2006. Prior to addressing the issues raised in the sealed motion filed by the government, while Mr. Fabbri was still counsel of record, the district judge appointed attorney Steven V. Stenger to represent Blake for purposes of that hearing.

---

[2]  Respondent-Appellee's App'x at 1.

[3]  Respondent-Appellee's App'x at 3.

Before the motion could be addressed by the court, how-
ever, Mr. Fabbri moved to withdraw as Blake's counsel,
which request the court granted. Mr. Stenger's appoint-
ment to represent Blake was then expanded by the judge
to include all matters related to his defense. Mr. Stenger
stated to the court that he intended to file a motion
seeking Blake's release on bond pending trial. In light of
Mr. Stenger's proposed filing, the court set a bond
hearing for January 9, 2007, which was, coincidentally,
the same date as Blake's original trial setting.

At the December 28th hearing, the district judge also
reset Blake's trial for April 17, 2007, to reflect the change
in defense counsel and the need for additional prepara-
tion time for the trial. When counsel for the government
inquired of the district judge whether the time period
between the filing of their conflict of interest motion
and the January 9, 2007 bond hearing would be
tolled under the Speedy Trial Act ("the Act"), the judge
temporized, saying, "I don't know. This is an unusual
situation."[4] No such finding was ever made by the
district judge.

It is likely that one of the things that made the situation
"unusual" in the judge's mind was that approximately
eight months earlier he had been informed of a similar
allegation of a conflict of interest on the part of Mr. Fabbri
in another criminal prosecution. On that occasion, the
conflict issue was resolved without any direct involve-
ment by the district court, which led the judge to assume

---

[4]  A-56.

that Mr. Fabbri apparently had had no conflict of interest after all. When the conflict issue arose in Blake's case, the district judge recalled the prior situation, but, because that defendant elected to proceed with Mr. Fabbri as his counsel, he "just assumed that the matter had resolved itself one way or the other." In neither case was the district judge required to make an inquiry himself or a ruling.[5]

During Blake's January 9, 2007 bond hearing, the government again requested that the time period between the filing of the bond reduction motion by Defendant and the date of that hearing be deemed excludable under the Speedy Trial Act calculations based on an "ends of justice" finding by the district court. The judge, however, again refrained from entering that finding, stating that "[a]pparently everyone was aware of this situation, but it was only when the defendant jumped up and said he wanted to go to trial in ten days that the motion comes."[6] As an alternative to the Speedy Trial Act finding by the judge, the government sought an order setting Blake's trial for a date on or before March 12, 2007. At the February 26, 2007, hearing on the government's motion, Blake waived his right to a jury trial and consented to his attorney's (Stenger) plan to file a series of pretrial motions. The district court thus rescheduled the bench trial for March 23, 2007 and denied as moot the government's motion for speedy trial.

---

[5]   A-2, A-4.

[6]   A-4.

On February 28, 2007, Mr. Stenger filed two discovery motions and two motions to suppress evidence. On March 1, 2007, Mr. Stenger also filed a sealed motion to dismiss the indictment.

On March 5, 2007, a hearing was conducted on these defense motions during which the judge ruled (and in which order the government acquiesced) that any evidence supplied by Blake in his proffer to law enforcement agents during the time he was represented by Mr. Fabbri was to be excluded at trial and not otherwise used against him. However, the Court refused to bar the testimony of Blake's co-defendant or to exclude any statements made by Blake prior to Mr. Fabbri's appearance in the case. On March 20, 2007, Mr. Stenger moved to continue the March 23rd trial to allow time to review what he described as voluminous discovery, on which motion the judge set a hearing for March 23, 2007. Two days prior to that hearing, on March 21, 2007, the government filed a superseding indictment against Blake adding two narcotics-related offenses.

At the March 23rd hearing on Defendant's motion to continue the trial, Blake inquired about the impact of the superseding indictment on his trial date. Ultimately, Blake wound up withdrawing his consent to his counsel's previously requested continuance and waived the Act's 30-day allotment of time to prepare for trial on the two new charges. Blake was arraigned on the new charges and demanded a jury trial on all counts, rescinding his prior waiver of a jury. Trial was set for March 27, 2007 and commenced on that date, and two

days later, on March 29, 2007, the jury returned verdicts of guilty on all counts. On July 16, 2007, Blake was sentenced, and his conviction and sentence were affirmed by our court following his direct appeal. *United States v. Blake*, 286 F. App'x 337 (7th Cir. 2008).[7]

On July 23, 2009, Blake timely filed his § 2255 petition, claiming that his attorneys were ineffective, more particularly that: (1) Mr. Fabbri had a clear conflict of interest based on his status as a target of an ongoing criminal investigation and that he and the government improperly hid Mr. Fabbri's conflict of interest so they could conspire together to Blake's disadvantage; (2) Mr. Stenger improperly failed to move for dismissal of the charges against Blake based on violations of the Speedy Trial Act; and (3) Blake's (two) appellate counsel were ineffective in failing to raise the violation of Blake's Sixth Amendment right to counsel of his choosing following Mr. Fabbri's withdrawal and the district court's appointment of new counsel. The district court denied Blake's § 2255 petition, finding that: (1) while

---

[7] After pleading guilty to an information charging him with failure to file a currency transaction report, Mr. Fabbri was convicted and sentenced to eighteen months of incarceration followed by two years of supervised release, a $40,000 fine, $36,000 in restitution, and the $100 special assessment. As previously noted, that case was prosecuted by an AUSA assigned to and supervised by the U.S. Attorney for the adjoining judicial district, the Southern District of Illinois having been "screened off" from the investigation into Fabbri's conduct by the Department of Justice.

the failure to disclose the conflict of interest was "unfortu-nate," it did not adversely affect the outcome of the trial; (2) several pretrial motions filed by both sides tolled the time limits of the Act, thereby eliminating any basis to assert that the Speedy Trial Act was violated; and (3) Mr. Fabbri's withdrawal as Blake's attorney was proper, given Mr. Fabbri's conflict of interest and that, when given the opportunity to waive the conflict, Blake declined to do so; appellate counsel was therefore not ineffective in failing to challenge Mr. Fabbri's withdrawal.

On July 22, 2011, Blake filed a notice of appeal from the trial court's denial of his § 2255 petition and a request for a Certificate of Appealability ("COA"). The district court denied Blake's request on September 26, 2011. Blake appealed the district court's denial of the COA to the Seventh Circuit on October 31, 2011. On February 3, 2012, we granted Blake's request for a COA, directing counsel to address Blake's claims of ineffective assistance of counsel and his counsels' handling of his speedy trial rights.

## II. DISCUSSION

Blake's appeal raises three claims of ineffective assistance of counsel: first, the ineffective assistance of his initial attorney (Mr. Fabbri); next, the ineffective assistance of his trial attorney (Mr. Stenger), who was appointed to represent Blake after Mr. Fabbri withdrew; and finally, the ineffective assistance of his third set of attorneys (Messrs. Blegen and Bradstrader), who represented him on his direct appeal.

### A. LEGAL STANDARDS GOVERNING INEFFEC-TIVE ASSISTANCE OF COUNSEL CLAIMS GENERALLY

Blake's § 2255 claims are based on the Sixth Amendment. Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997). The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (citations omitted).

A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. *Wyatt*, 574 F.3d at 458 (citation omitted). In that context, the Court considers whether in light of all the circumstances counsel's performance was

outside the wide range of professionally competent assistance. *Id.* The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Further, counsel's performance is to be evaluated in light of the discretion properly accorded an attorney to develop appropriate trial strategies according to the attorney's independent judgment, given the facts of the case, at least some of which may not be reflected in the trial record. *See Strickland*, 466 U.S. at 689-690. Courts are admonished not to become "Monday morning quarterback[s]" in evaluating counsel's performance. *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915 (citations omitted); *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

An appellate court reviews a district court's denial of a § 2255 petition *de novo* as to issues of law. *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) (citing *Tezak v. United States*, 256 F.3d 702, 712 (7th Cir. 2001)). Factual findings are reviewed for clear error. *Id.* Because

the district court here denied Blake's § 2255 petition without conducting an evidentiary hearing, Blake contends (without citation to any controlling authority) that his claims should be reviewed for an abuse of discretion. We do not regard that as a correct statement of law, so we shall apply the clear error/*de novo* principles of review referenced above.

## B. INEFFECTIVE ASSISTANCE BASED UPON ATTORNEY FABBRI'S CONFLICT OF INTEREST

Blake contends that he was deprived of his Sixth Amendment right to effective assistance of counsel due to the conflict of interest of his initial attorney, Mr. Fabbri, who, he maintains, was in cahoots with the government in an effort to gain an advantage in his own prosecution, rather than to advance only Blake's interests. Our court held in *Spreitzer v. Peters*, 114 F.3d 1435 (7th Cir. 1997) that the issue of whether an attorney has engaged in a conflict of interest in representing his client involves both questions of law and of fact. *Id.* at 1450. Thus, we apply a *de novo* standard of review. *Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir. 1995) (citation omitted), *cert. denied*, 519 U.S. 829 (1996).

The Sixth Amendment right to effective assistance of counsel encompasses "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978)); *accord United States v. Cirrincione*, 780 F.2d 620, 624

(7th Cir.1985) (citations omitted). It is well settled that "[c]riminal defendants are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest, at all stages of the proceedings against them." *United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir. 2005) (citing *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004)).

Two frameworks exist for analyzing ineffective assistance of counsel claims based on a conflict of interest by defense counsel. One framework applies if defense counsel labored under an "actual" conflict of interest. *See Cuyler*, 446 U.S. 335. In such a case, "[i]f there is any 'adverse effect' on the attorney's performance, prejudice is presumed and the defendant's argument prevails." *Freeman v. Chandler*, 645 F.3d 863, 869 (7th Cir. 2011) (citing *Hall*, 371 F.3d at 973). This standard, as set forth in *Cuyler*, applies "if the defense counsel was faced with a choice between advancing his own interests above those of his client." *Hall*, 371 F.3d at 973 (citing *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994)). A petitioner may show an adverse effect by demonstrating "that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest." *Hall*, 371 F.3d at 974.

Under the second analytical framework where there has been no "actual" conflict of interest alleged or shown, a petitioner must establish that the conflict resulted in ineffective assistance according to the familiar and more demanding *Strickland* standard, whereby the petitioner must demonstrate "that counsel's representation fell

below an objectively reasonable standard of care, and that there is a reasonable probability that but for counsel's unprofessional errors the trial outcome would have been different." *Freeman*, 645 F.3d at 869 (citing *Strickland*, 466 U.S. at 687, 694).

The government argues here that Mr. Fabbri's conflict was not an actual conflict of interest, based on the precautions taken in "screening off" AUSA Killian and the other Southern District of Illinois prosecutors from Mr. Fabbri's prosecution.[8] Thus, there is no evidence that Mr. Fabbri's representation of Blake was incompatible with, or influenced by, the investigation into Mr. Fabbri's own suspected criminal conduct. Further, there is no evidence, according to the government, establishing that Mr. Fabbri was aware that AUSA Killian was a potential witness in the prosecution against him (Fabbri), which defeats Blake's argument that Mr. Fabbri had an incentive to "curry favor" with the Southern District of Illinois AUSAs. The district court sidestepped

---

[8] In moving to withdraw, Mr. Fabbri apparently did not personally believe he had an actual conflict of interest, but conceded that there was in his continued representation of Blake an appearance of a conflict. Mr. Fabbri stated at the hearing, in Blake's presence: "I believe that there is a potential for the idea that there could be an understanding by my client, right or wrong, that there is an appearance that I may act or react or give advice in confidence to a client based on my situation. I don't believe that's true. I don't consciously believe I could do that . . . . But the fact is it's not what I do, it's the appearance of what I do or don't do." A-78.

this issue of whether Mr. Fabbri possessed an actual or potential conflict, finding it "beside the point," because Blake had entirely failed to establish either that his defense was prejudiced or that Mr. Fabbri's performance was adversely affected by the conflict of interest.[9]

### 1. Actual Conflict

We are not persuaded, based on the evidence before us, that Mr. Fabbri possessed an actual conflict of interest during the two months he represented Blake,[10] but

---

[9] A-11.

[10] As noted above, in its motion seeking a determination regarding the extent of Mr. Fabbri's conflict, the government stated it "believe[d] that Attorney Fabbri has an actual, or at least a significant potential conflict of interest in representing Byron Blake." Respondent-Appellee's App'x at 1. We do not view that statement as a concession by the government that an actual conflict existed. We have previously held that in cases in which a defendant asserts that an investigation into the criminal activities of his counsel creates a conflict between the defendant's interest in effective representation and the attorney's interest in protecting himself from the investigation, an actual conflict arises "only where there is a danger that [counsel] would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation.'" *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir. 1990). Here, the criminal activity for which Mr. Fabbri was being investigated was fully known to the government and wholly
(continued...)

we concede that the appearance of a conflict of interest was indeed strong. Even if there were a sound evidentiary basis on which to base a finding of an actual conflict, Blake has failed to establish that Mr. Fabbri's performance on his behalf was adversely affected by virtue of it, that is, that Mr. Fabbri's performance of his duties on behalf of Blake would have been different, had there been no conflict.

In his attempt to make the requisite showing under *Cuyler*, Blake argues that Mr. Fabbri was trying to curry favor with the government both when Fabbri advised Blake to provide a proffer (even before he (Fabbri) had reviewed all of the discovery in the case) and also when Fabbri filed the December 15, 2006 motion to continue. Blake maintains that had Mr. Fabbri not been conflicted, he would have acted otherwise on those two occasions. There is simply no evidence to support these contentions, however, and Blake's assumptions cannot support the weight of the claims he advances in this regard.

---

(...continued)

unrelated to the charges against Blake. Likewise, Mr. Fabbri's case was being investigated by a separate U.S. Attorney's office under the direction of the Department of Justice. Thus, Mr. Fabbri would have had no basis on which to fear that in representing Blake in a case being prosecuted within the Southern District of Illinois he would provide the U.S. Attorney's office in the Central District additional evidence about his own misconduct, or that he was somehow incented to pull punches in Blake's defense.

The fact that Mr. Fabbri allowed or encouraged Blake to make a proffer prior to his review of the government's discovery does not, standing alone, raise a red flag suggestive of a conflict of interest. It is not unusual for Defendants to seek a strategic advantage in prosecutions against them by voluntarily providing early proffers, particularly in cases like this one which involve co-defendants. Any suggestion by Blake that Mr. Fabbri had an ulterior motive in advising him to make a proffer to the government is based on nothing more than Blake's suppositions.

Similarly, no facts have been adduced to support Blake's allegation that the reason Mr. Fabbri sought a continuance on December 15, 2006 was because he believed the government wanted him to do so or would be inclined to view such a maneuver favorably. In his motion requesting the continuance, Mr. Fabbri cited the need for more time to review the discovery and represented that he had discussed with Blake the impact of requesting additional time. Blake is left only with his own speculations in arguing that the reason stated by Mr. Fabbri for requesting the continuance was disingenuous. Nor is there any evidence that the government either wanted or wished that Mr. Fabbri would file such a motion. At that early point in the proceedings—when no more than twenty-four non-excludable days had passed under the Speedy Trial Act – the government could easily have asked for the continuance itself, if it chose to do so.

In short, there is no evidence to support Blake's assertion that Mr. Fabbri "pulled his punches" or acted out of

"a fear of retaliation" by the government during the time he was Blake's counsel and nothing in the record, based on our own review, gives rise to such an inference. To the extent that Blake contends that Mr. Fabbri was incented to cooperate with the government or that he acted in a manner he would not otherwise have done to the detriment of Blake's interests, there simply is no evidence to support such arguments.[11]

---

[11] Blake also argues that he is entitled to the automatic reversal of his conviction or a remand for an evidentiary hearing under *Holloway v. Arkansas*, 435 U.S. 475, 484-91 (1978), because the district court knew or should have known about Mr. Fabbri's conflict of interest and failed to adequately address it. *See Holleman v. Cotton*, 301 F.3d 737, 742 (7th Cir. 2002) ("Under *Holloway* and *Cuyler*, a trial court has the duty to inquire adequately into a trial counsel's conflict of interest if it knows or reasonably should know that a particular conflict exists."). However, we have recognized that "[s]ubsequent Supreme Court decisions have limited the *Holloway* holding to situations in which the district court requires joint representation over a timely objection." *Lafuente*, 426 F.3d at 897 (citing *Mickens v. Taylor*, 535 U.S. 162, 168-69 (2002); *Cuyler*, 446 U.S. at 346). In Blake's case, Mr. Fabbri's conflict did not arise from joint representation. And, in any event, even assuming the *Holloway* standard applied here, Blake has failed to show that the district court failed to adequately investigate a conflict it knew or reasonably should have known existed.

Blake's misplaced reliance on *Holloway* is an outgrowth of his assertion that the trial judge had actual knowledge of Mr. Fabbri's conflict of interest as early as when Mr. Fabbri

(continued...)

## 2. Potential Conflict

Nor has Blake satisfied the more demanding *Strickland* standards. Under *Strickland*, we need not dwell on whether the quality of Mr. Fabbri's representation was lacking when measured against an objectively reasonable standard of care. Instead, we shall go directly

---

(...continued)

first entered his appearance on October 30, 2006, based on a prior instance in another case before that judge where a similar charge had been leveled against Mr. Fabbri. However, the most that can be said in terms of the trial judge's independent, prior knowledge of Mr. Fabbri's possible conflict of interest was that the prior situation perhaps should have raised a suspicion in the judge's mind that Mr. Fabbri might have a conflict of interest in Blake's case. Such a suspicion based on an arguably similar instance of another claim of conflict of interest against Mr. Fabbri eight months earlier cannot fairly be regarded as notice to the judge of the conflict sufficient to require him to take some action to address it, particularly given that the prior instance was resolved without the judge ever having to adjudicate the issue and Mr. Fabbri's continued involvement as the defense counsel throughout the entire proceedings. We hold with little difficulty that the trial judge here did not have knowledge that Mr. Fabbri's representation posed any potential or actual conflict of interest prior to the government's filing of its notice in Blake's case, and once apprised of the potential conflict, the trial judge inquired in timely fashion. Nothing about this series of events indicates that the trial judge acted inappropriately or with dilatoriness in responding to the alleged conflict of interest once he had knowledge of it.

to the issue of whether there was any prejudice suffered by Blake based on Mr. Fabbri's performance. In doing so, we look to determine whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *United States v. Allen*, 390 F.3d 944, 951 (7th Cir. 2004) (quoting *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001)). Again, after careful review, we find no find no basis on which to conclude that, but for the conflict, the outcome of Blake's trial would have been different.

Blake attempts to establish prejudice based on his having provided a proffer to the government during the time Mr. Fabbri served as his counsel. We have addressed these facts previously in this opinion. Because the district court barred any use of the evidence supplied by Blake in his proffer for any purpose at trial, any potential prejudice from the proffer was entirely nullified. Blake has not contended that his proffer was handled in a procedurally unusual or prejudicial way by the government causing him some unfairness that was not cured by the judge's order in limine. Further, Blake has not argued that his participation in the proffer session in and of itself caused him some form of unspecified prejudice. Accordingly, we find no evidentiary support for Blake's assertion that his participation in the proffer session prejudiced him in his defense or changed the outcome of any proceeding or, in particular, his trial.

The only other prejudice claimed by Blake was that the belated disclosure of his attorney's potential conflict

caused a delay in his trial. Assuming such a delay, it is of no legal consequence because Blake's only entitlement to a particular trial date is his statutory right to a trial within 70 non-excludable days under the Speedy Trial Act. When that requirement is satisfied, there is no other basis on which to find any legally cognizable prejudice. Further, as we address below in a more comprehensive fashion, Blake's rights under the Speedy Trial Act were not violated.

It deserves to be noted as well that whatever procedural delays did occur resulted almost entirely from motions filed on Blake's behalf and for his benefit, all (with the exception of the December 15, 2006 motion to continue) without objection from him. While it may be true that pretrial activities did not proceed at a pace fast enough to suit Blake, there has been no showing of any prejudice to his defense based on this timetable. No defendant is entitled by law to any particular trial date, so long as the Speedy Trial Act requirements have been met.

Nor do we credit Blake's attenuated theory that he was prejudiced by Mr. Fabbri's belated disclosure of his conflict of interest, since the delay allowed the government additional time and opportunity to secure a superseding indictment containing the two additional felony charges against him. Again, Blake's argument is pure speculation because there is no evidence to indicate that the government could not or would not have secured the supplemental indictment at some earlier point in time. In any event, we agree with the district court's observation that because the charges in

both indictments included a conspiracy to distribute and possess with intent to distribute in excess of 50 grams of crack cocaine, whether the trial had occurred on January 9, 2007 or March 27, 2007, the evidence against Blake would have been the same.[12] Thus, Mr. Fabbri's two month delay in resolving his conflict of interest did not result in any prejudice to Blake's defense.

Clearly, the criminal investigation against Mr. Fabbri and his failure to inform Blake of it at the time Blake retained him was at the very least problematic, and perhaps lacking in terms of proper professional practice standards. It was also, as the trial judge characterized it, "unfortunate." However, we find no grounds upon which to conclude that Mr. Fabbri's performance on behalf of Blake was adversely affected by his conflict of interest or that Blake's defense was prejudiced, pursuant to the *Strickland* standards, as a result of this conflict. Accordingly, Blake's claim of ineffective assistance of counsel claim by Mr. Fabbri is unavailing, and we affirm the denial of his § 2255 motion on this basis by the trial court.

## C. INEFFECTIVE ASSISTANCE CLAIM AGAINST ATTORNEY STENGER

Blake claims that his replacement trial attorney, Mr. Stenger, who was appointed by the court to represent him when Mr. Fabbri withdrew, was ineffective based on his (Stenger's) failure to move

---

[12] A-12.

for dismissal of the indictment based on violations of the Speedy Trial Act. The Act provides that a defendant must go to trial within 70 days of either the date of the issuance of an indictment or a defendant's first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). If a defendant is not brought to trial with that 70-day window, the indictment against the defendant must be dismissed upon the defendant's motion. § 3162(a)(2). Dismissal may be with or without prejudice. *Id.*

There is a series of statutorily permitted exclusions from the running of the 70-day clock which reflect Congress's understanding that a certain amount of scheduling flexibility is required by the courts in order to properly, fairly, and efficiently conduct and complete pretrial preparations. *See* § 3161(h)(1)-(8). Periods of exclusion include "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . . . ." § 3161(h)(1)(D).

During the period when the events at issue here occurred, time attributable to these purposes was excluded, some automatically pursuant to the terms of the Act when no showing of a causal connection between the delay and the court's actual consideration of pretrial motions is required. *United States v. Montoya*, 827 F.2d 143, 150-51 (7th Cir. 1987). Whether to grant a continuance along with the related decision(s) of whether to exclude periods of delay under the Act are

matters entrusted to the sound discretion of the district court, and any decision made does not constitute reversible error absent a showing of abuse of discretion by the court and of actual prejudice. *United States v. White*, 443 F.3d 582, 588-89 (7th Cir. 2006) (citing *United States v. Taylor*, 196 F.3d 854, 860 (7th Cir. 1999); *United States v. Marin*, 7 F.3d 679, 683 (7th Cir. 1993)).

Blake was arraigned on October 30, 2006 and his trial began on March 27, 2007. The time that elapsed between his arraignment and the start of his trial, therefore, according to the government's calculations, totaled 148 days, 85 of which were excludable under the Act, leaving only 63 as non-excludable days, which, if properly computed, is well within the 70-day statutory limit. The government asserts that of the 85 excluded days, 23 are attributable to the government, 21 are attributable to the district court's initial order concerning pretrial motions, and virtually all of the remaining 41 days are attributable to Blake's motions or the motions of his counsel filed on his behalf.

The government submitted as a part of its briefing on appeal the following chart, which details the respective time allocations and computations pursuant to provisions of the Act. The chart also contains cross-references to the record, anchoring the time calculations to events reported on the court's docket. We reproduce that chart here for its clarity and, as confirmed by our review, its accuracy.[13]

---

[13] Brief of Respondent-Appellee at 30.

| Time Period | Source | Dates | Time |
|---|---|---|---|
| Arraignment to Trial | R. 9, R. 109 | 10-30-06 – 03-27-06 | 148 days |
| Pretrial Motion Period | R. 12 | 10-30-06 – 11-20-06 | -21 days |
| Defendant Motion to Continue | R. 27, R. 28 | 12-15-06 – 12-18-06 | -4 days |
| Government Motion (Conf. of Int.) | R. 32, R. 36 | 12-20-06 – 12-28-06 | -9 days |
| Defendant Mot. for Recons. of Bond | R. 50, R. 55, R. 57, R. 63 | 12-28-06 – 01-24-07 | -27 days |
| Government Speedy Trial Motion | R. 69, R. 71 | 02-13-07 – 02-26-07 | -14 days |
| Defendant Various Motions | R. 80-86 | 02-28-07 – 03-05-07 | -6 days |
| Defendant Motion for Continuance | R. 97, R. 104 | 03-20-07 – 03-23-07 | -4 days |
| | | Non-excludable time | 63 days |

Blake disputes various portions of this chart as well as the government's computations. However, having failed to present any Speedy Trial Act claim to the district court in the form of a motion to dismiss the indictment, he has waived this claim. The Act expressly provides that

defendants waive their rights under the Act when they do not move to dismiss the indictment. 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."). Apparently prepared to concede a waiver, Blake resurrects the issue by blaming his attorney for his ineffectiveness in failing to raise the Speedy Trial Act violations before the trial court. However, because Blake fails in his effort here to demonstrate that the Act was in fact violated, his counsel cannot be deemed ineffective for having failed to file a motion to dismiss the indictment on that basis.

We need not linger on the issue of whether Blake's rights under the Act were actually violated. In fact, rather than focusing on the specific time computations, Blake limits his § 2255 arguments to a generalized and multi-faceted attack on the government's alleged bad faith. Blake alleges bad faith beginning when AUSA Killian conspired with Mr. Fabbri to file the December 15, 2006 motion for continuance of the trial and thereafter in retaliating against Blake for his resistance during the pretrial hearing to a continuation of his trial date by getting Mr. Fabbri removed as defense counsel in order to secure a delay in Blake's trial thereby allowing additional charges to be filed against him in the superseding indictment. Thus, he argues, beginning with that first motion raising Mr. Fabbri's conflict of interest, a series of events was set into motion that unfairly delayed his trial and allowed the trial court to disregard

his rights from the earliest point(s) in this prosecution forward to its conclusion.[14]

Despite Blake's stringing together of this series of procedural occurrences, we do not find in them, whether considered individually or together, any evidence of bad faith or of collusion between the government attorneys and Blake's initial counsel. These steps simply track the progress of this prosecution. Blake's attempt to assign base motives to each phase of the litigation and the respective participants does not add up. Further, our review of the Speedy Trial Act computations confirms the regularity of the process and of the trial court's compliance with the Speedy Trial Act, as detailed below:

- The Pretrial Motion Period (the 21-days between October 30, 2006 and November 20, 2006) was automatically excludable under the holding in *Montoya*, 827 F.2d at 151-53.[15]

---

[14] Petitioner-Appellant Brief at 34.

[15] Since the time of Blake's trial, the Supreme Court in *Bloate v. United States*, 559 U.S. 196 (2010) ruled that tolled time in submitting and processing pre-trial motions is no longer automatically excludable. *Id.* at 203-04. However, because the law was clear at the time of Blake's trial that the days required to prepare pretrial motions were automatically excludable, Mr. Stenger's performance in failing to move to dismiss the indictment based on this particular allocation of time was clearly not deficient. *See Knox v. United States*, 400 F.3d 519, 522 (7th Cir. 2005) ("A failure to anticipate shifts

(continued...)

- Defendant's Motion to Continue is an excludable pretrial motion, even though Blake did not consent to its filing. In *United States v. Gearhart*, 576 F.3d 459, 463 n.3 (7th Cir. 2009), we held that under the Act, counsel is not required to obtain the defendant's consent prior to making a tactical decision in a case, such as the decision to seek a continuance. (The excludable period was **4 days**: 12/15/06 to 12/18/06.)

- The Government's motion seeking a determination of whether Attorney Fabbri had a conflict of interest was excludable. Although the record reflects AUSA Killian's having had limited knowledge that Mr. Fabbri was under investigation from the beginning of Blake's prosecution, when Mr. Fabbri entered his appearance, he was not aware of a conflict until December 18, 2006, when he first learned that an indictment against Mr. Fabbri was imminent and that Blake wanted to proceed to trial without delay. At that point, AUSA Killian promptly withdrew from the case, and replacement AUSAs immediately filed the motion with the court raising the conflict issue. The government gained no improper advantage from this delay and Blake has failed to establish that this motion was filed in bad faith in an attempt to delay Blake's trial

---

(...continued)

in legal doctrine cannot be condemned as objectively deficient.") (citation omitted).

or capitalize in some other way on the situation. (The excludable period was **9 days**, running between 12/20/06 to 12/28/06.)

- Defendant's Motion for Reconsideration of Bond was an oral motion made by Blake's new counsel upon replacing Mr. Fabbri. We agree with our sister circuits that oral motions toll the clock the same as written motions for purposes of Speedy Trial Act calculations. *See, e.g.*, *United States v. Broadwater*, 151 F.3d 1359, 1361 (11th Cir. 1998) (per curiam); *United States v. Rodriquez*, 63 F.3d 1159, 1164-65 (1st Cir. 1995) (citations omitted); *United States v. Moses*, 15 F.3d 774, 776 n.3 (8th Cir. 1994) (citation omitted); *United States v. Nixon*, 779 F.2d 126, 130-31 (2d Cir. 1985). Thus, this period of exclusions was **27 days**: 12/28/06 to 01/24/07.

- The Government's Speedy Trial Motion was filed on 2/13/07 and was resolved on 2/26/07. The excludable time for this pretrial motion was **14 days**.

- Defendant's counsel filed various pretrial motions beginning 2/28/07 through 3/5/07, resulting in **6 days** of excludable time.

- Defendant filed a motion for continuance on 3/20/07 which was pending until 3/23/07, amounting to a total of **4 excludable days**.

Thus, it is clear that the tally of excludable time concluded with 85 days. The non-excludable time was 63 days. The total amount of time consumed between the date of Blake's indictment and the date of trial was 148 days.

These calculations clearly comply with the 70-day-to-trial requirement in the Act.

Blake's reference to the trial judge's refusal to make "ends of justice" findings in response to the government's requests on three occasions (December 28, 2006; January 9, 2007; and February 13, 2007) is a red herring; in no way does it serve as evidence of the government's bad faith. The computations under the Act were excludable whether or not the judge made such a determination, as shown above, and it is beyond dispute that a judge possesses broad discretion to make the rulings considered by him/her to be appropriate under the circumstances consistent with the Act's purposes and dictates. The judge's refusal to make "ends of justice" findings here signals nothing with regard to the government attorneys' bad faith or the reasonableness and sufficiency of Mr. Stenger's performance.

A claim of ineffective assistance of counsel must be supported by objective evidence, not merely by the movant's own self-serving testimony. *See Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004). Here, we have only Blake's self-serving claims. No violation of the Speedy Trial Act occurred in bringing his case to trial, which defeats Blake's claim that his counsel was ineffective in failing to move for dismissal of the indictment.[16]

---

[16] The parties have focused their arguments solely on whether counsel was ineffective for failing to seek dismissal based on a violation of Blake's statutory rights under the

(continued...)

---

(...continued)

Speedy Trial Act and have not put forth any constitutional arguments regarding whether counsel was ineffective for failing to investigate and pursue a speedy trial claim under the Sixth Amendment. This is likely because a constitutional speedy trial violation generally requires a showing of a much longer period of delay to trigger relief than is at issue here. "Simply to trigger a [constitutional] speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . ." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972)). As we have recognized, "[a]s a general matter, courts have found delays approaching one year to be presumptively prejudicial." *White*, 443 F.3d at 589-90 (citing *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000)). The constitutional right attaches only after an arrest, an indictment, or some other form of official accusation. *United States v. Souffront*, 338 F.3d 809, 835 (7th Cir. 2003) (citations omitted). Here, Blake was initially indicted on October 19, 2006 and arraigned on October 30, 2006. A superseding indictment was returned on March 21, 2007 and Blake's trial began on March 27, 2007. The approximately five month delay between Blake's indictment and trial is therefore plainly not within the range of delay that we have found to be long enough to warrant a more in-depth analysis. *Compare United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1127 (7th Cir. 1984) (finding a pretrial delay of eight months presumptively prejudicial) *with Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (finding that a pretrial delay of approximately eight months in a robbery case did not constitute pretrial delay).

### D. INEFFECTIVE ASSISTANCE OF ATTORNEYS BLEGEN AND BRANDSTRADER

Blake's final § 2255 claim is that his attorneys on direct appeal, Messrs. Blegen and Brandstrader, were ineffective in failing to raise on appeal the deprivation of his Sixth Amendment right to counsel of his own choosing, based on the district judge's allowance of Mr. Fabbri's motion to withdraw without first determining whether disqualification was warranted and without providing Blake an opportunity to waive any conflict of interest Fabbri might have had. In circumstances such as these, where an ineffective assistance claim is based on an attorney's failure to raise a viable issue on appeal, "we must first analyze the trial court record to determine whether [the defendant's] appellate attorney, in fact, ignored 'significant and obvious' issues." *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)). For an attorney's performance to be considered ineffective on such grounds, it must be shown that the neglected issues are "clearly stronger" than the arguments that actually were raised on appeal. *Suggs*, 513 F.3d at 678. No such showing has been made here; indeed, we believe none could reasonably be made.

Initially, as recognized by the district judge, Blake's argument makes no sense given his contemporaneous contention in this appeal (as well as in his § 2255 petition) that Mr. Fabbri was ineffective based on a conflict of interest. In effect, Blake's argument is that he was denied the right to choose ineffective counsel. Given the

obvious weakness of this argument, appellate counsel could reasonably have believed that it did not warrant advancement on appeal. *See Knox v. United States*, 400 F.3d 519, 522 (7th Cir. 2005) ("A lawyer who concentrates attention on issues that have the best chance of success does not display objectively deficient performance, and thus does not render ineffective assistance of counsel.").

More significantly, contrary to Blake's contention, before the district judge granted Mr. Fabbri's motion and allowed him to withdraw, he expressly engaged Blake by providing him with an opportunity to waive Mr. Fabbri's alleged conflict of interest, inquiring: "Do you want [Frank Fabbri] to be your lawyer or not? That's what it amounts to." Blake responded, "I don't see no reason why he should. I feel like he is in the same situation I'm in."[17] In light of the fact that Blake explicitly refused to waive the conflict and willingly consented to Mr. Stenger's appointment as replacement counsel, it clearly was not unreasonable for Blake's appellate counsel to omit this issue on appeal in order to concentrate on other, stronger arguments. Accordingly, we affirm the district court's ruling that Blake has raised no viable claim that should have been appealed, so that a failure to do so constitutes the ineffective assistance of appellate counsel.

---

[17] A-14.

### III. CONCLUSION

As explained above, Blake has failed to establish that any of his attorneys provided him with ineffective assistance of counsel either during his prosecution or on appeal. The district court's denial of his § 2255 motion is therefore AFFIRMED.